NEBRASKA TELEPHONE COMPANY, APPELLANT, V. YORK GAS AND ELECTRIC LIGHT COMPANY, APPELLEE.

[FILED SEPTEMBER 17, 1889.]

1. Telephones: ELECTRIC LIGHT WIRES: PRIORITY OF CONSTRUCTION. In an action instituted by a telephone company, to enjoin an electric light company from erecting its poles and wires in the same street upon which the telephone wires were placed, it was shown by sufficient evidence that the ordinance giving the authority to the electric light company to erect its poles and wires upon the street was passed, and said company had constructed its plant and erected a part of its poles and wires, had decided upon the streets and public ground which it would occupy, and notified the telephone company of the fact, before it had constructed its lines thereon, and which the officers and agents of the telephone company stated would be satisfactory to them, and had also commenced the erection of its line on the streets designated, when the telephone company erected its poles and wires on the designated line, which was immediately followed by the erection of the electric light poles and wires. It was *held*, that the finding of the district court that the electric light company first occupied the street, was sustained by the evidence.

2. ——: ——: INJUNCTION REFUSED. In such case, where there was sufficient evidence to sustain the finding of the above fact, the trial court would be justified in refusing an injunction against the electric light company, restraining it from occupying the streets in question.

3. ——: ——: NEARNESS WITHOUT INTERFERENCE. It having
   been shown upon the trial, and practically admitted by the
   attorneys and witnesses for the electric light company, that the
   erection of the telephone wire near the electric light wire would
   not injure the usefulness of the electric light wire, and no affirm-
   ative relief having been demanded by the answer, or sought at
   the trial, a decree of the district court restraining the tele-
   phone company from placing its line of wires near the wires ot
   the electric light company was, to that extent, reversed.

APPEAL from the district court for York county. Heard
below before NORVAL, J.

*Sedgwick & Power*, for appellant:

Defendant should not have been granted affirmative re-
lief. (Code, secs. 429, 262, taken from Ohio Code; *Klonne
v. Bradstreet*, 7 O. S., 326 ; Boone, Code Pleading, secs.
101, 102.) Some of the findings below are clearly wrong
and should be set aside. (*Mfg. Co. v. Feary*, 22 Neb., 68;
33 N. W. Rep., 485 ; *Seymour v. Street*, 5 Neb., 85.) De-
fendant cannot rely on estoppel, having failed to plead it,
and there being no evidence to support it if pleaded. (*R. Co.
v. Harris*, 8 Neb., 142 ; Bigelow, Estoppel [3d Ed.], 484,
486.) The grant is rather that of an easement or license
than of a franchise (*People v. Gas Co.*, 38 Mich., 154);
and is within the powers of the city. (Comp. Stats., 1887,
ch. 14, sec. 69, subds. 12, 28 ; Laws 1887, p. 634 ;
*Quincy v. Bull*, 106 Ill., 349.)

*France & Harlan*, for appellee :

The matters litigated are all of an equitable nature and
it was proper to grant affirmative relief. (1 Story Eq. Jur.,
sec. 71, N. 1, and cases cited ; *Wallace v. Wallace*, 63 Mich.,
326 ; 29 N. W. Rep., 841 ; *Whipple v. Farrar*, 3 Mich.,
436 ; *Miller v. Stepper*, 32 Mich., 194 ; *Bradley v. Bosley*,
1 Barb. Ch., 151.) Plaintiff is estopped by its own acts.
(*Nosser v. Seeley*, 10 Neb., 460 ; 6 N. W. Rep., 755.) A

franchise is a special privilege. (*Bank v. Earle*, 13 Peters, 519 ; *Curtis v. Leavitt*, 15 N. Y., 9-170) ; and must be a grant from a sovereign authority. (*Bridge Co. v. Shepherd*, 21 How., 112-123; *Thompson v. Moran*, 44 Mich., 602.) A municipal corporation cannot grant what has not been granted to it. (*Minturn v. Larue*, 23 How., 435, 437 ; *Gas Light Co. v. City Gas Co.*, 25 Conn., 19.) Public grants are to be construed strictly. (*Thompson v. R. Co.*, 3 Sandf. Ch., 625 ; 1 High on Inj., secs. 902, 909 ; Boone, Corporations, sec. 293, and cases cited.) The right to use the streets as in this case granted is a franchise and can only emanate from the state. (4 Wait's Act. & Def., pp. 614-16, sec. 12, cases cited ; *Boston v. Richardson*, 13 Allen, 160 ; *State v. Gas Co.*, 18 O. S., 262, 274, 292 ; *Milhau v. Sharp*, 15 Barb., 210; *Com. v. Boston*, 97 Mass., 555.) There is no statute from which the power to grant such franchises, by a city of the second class, may be derived.    Defendant is justly entitled to freedom from interference. (*Walker v. Armstrong*, 2 Kas., 198-220.) An injunction should be refused where defendant has been allowed to proceed at length and incur large expense. (1 High on Inj., sec. 915 ; *S. C. R. Co. v. C., etc., R. Co.*, 13 Rich. Eq. (S. C.), 339 ; *Fremont Ferry v. Dodge County*, 6 Neb., 18-26.) Injunction does not lie unless actual injury to a franchise exists.    There is a legitimate object for the erection of defendant's poles and wires, and equity will not restrain the accomplishment of such object merely because it may be perverted. (*Del., etc., R. Co. v. Camden, etc., R. Co.*, 2 McCart. (N. J.), 1 ; 1 C. E. Green (N. J.), 321 ; 3 Id., 546; *Penn. R. Co. v. Nat. R. Co.*, 8 Id., 441; *Central R. Co. v. Penn. R. Co.*, 31 N. J. Eq., 475.)

REESE, CH. J.

This action was instituted in the district court of York county and was for an injunction to restrain defendant

from interfering with the telephone system of the plaintiff in the city of York. A trial was had to the district court, which resulted in findings and a decree in favor of plaintiff in part, and of defendant in part, which is hereinafter set out at length.

It was alleged in the amended petition of plaintiff that plaintiff was incorporated under the laws of this state, and was doing a general telephone business in the various cities thereof, and that by an ordinance of the city of York, which is set out in full in the petition, the plaintiff was authorized to construct and operate its telephone system in the said city, and had before the institution of this action commenced the construction and operation of such system therein, connecting its system in the city of York with its general telephone system throughout the state; that the defendant had been authorized by an ordinance to construct an electric light and tower system in the city of York, and that it had commenced constructing the same; that in carrying on said business defendant used lines of wire for the purpose of conducting electricity, and that it was using and contemplated using wires for conducting electricity for the purpose of furnishing incandescent light to its patrons and the public, and wires for the conducting of electricity for furnishing arc lights for the use of its patrons and the public, and also for the purpose of furnishing power to its patrons and the public, to be used and applied in propelling machinery and for other purposes; that in conducting electricity for the purpose of supplying incandescent light a large quantity and force of electricity was and would be necessarily used, much larger in quantity and power than the current of electricity necessarily conducted over the lines of wires of plaintiff in the transaction of its telephone business, and in the conduction of electricity for the purpose of supplying arc light a still larger quantity and power of electricity was and would be necessarily conducted over the said wires of defendant than the quantity and

intensity of electricity used in supplying the incandescent light; that the wires charged with the amount of electricity necessary for supplying the incandescent light, when placed parallel with the wires of plaintiff, by reason of the incandescent light wires carrying a larger quantity and force of electricity, would greatly interfere with the use and operation of the wires of plaintiff in the transaction of its business—so much so that it would be impossible for it to carry on its business successfully if the wires carrying electricity for the purpose of supplying incandescent light were used and operated parallel with the wires of plaintiff, and at a less distance than three feet from its wires, even when the incandescent light wires were most cautiously and carefully operated. And even when the natural conditions were the most favorable for such operation of the incandescent light, and under circumstances that from the nature of the business of supplying electricity for lighting purposes were liable at any time to occur even with the most careful management, the current of electricity for supplying the incandescent light, if from wires parallel with the wires of plaintiff even at a greater distance than three feet, would interfere with and wholly prevent the operation and use of the line of wires of plaintiff; that the wires of defendant placed and operated for the purpose of supplying electricity for arc light would, when charged with electricity for the purpose for which they were intended and erected, and when running parallel with the wires of the plaintiff, if they were placed and so used within a less distance than ten feet of the wires of plaintiff, interfere with and wholly prevent the operation of wires of plaintiff in the transaction of its telephone business. And the wires for supplying electricity for arc light would, when charged with electricity for the purpose for which they were intended, and when crossing the wires of plaintiff, if they were placed and so used at a less distance than ten feet from the wires of

plaintiff, interfere with the proper operation of its wires; and from the liability of the wires to come in contact with the wires of plaintiff there would be great danger of accident, not only to the property of plaintiff, but the property of others, unless the arc light wires of defendant were securely enclosed in good boxing so as to prevent the possibility of the wires coming in contact with the wires of plaintiff. And if the arc light wires so crossing the wires of plaintiff were placed at a less distance than five feet from the wires of the plaintiff, they would greatly interfere with the proper operation of its wires. That the wires of defendant placed and used for the purpose of conducting electricity for the purpose of power would have greater force and effect and interfere with the operation of plaintiff's wires when running parallel therewith, or when crossing the same, than the wires charged with electricity for the purpose of supplying the incandescent or arc light, and if any of the wires of defendant were placed parallel with the wires of plaintiff, and on the same side of the street or alley of the poles and wires of plaintiff, and were used for the purpose of conducting the electricity for incandescent or arc light, or for power purposes, by reason of the wires of plaintiff becoming loose or misplaced by accident or other cause, the wires of plaintiff coming in contact with the wires of defendant, the current of electricity being conducted over said wires of defendant and being transmitted thereby to the wires of plaintiff, and by reason of other circumstances and conditions necessarily arising and that would necessarily arise in the carrying on of the business, there would be continual danger and liability of damage and destruction of the instruments and appliances and the property of plaintiff, and of the property of other persons adjacent to the wires so placed and operated. That at the time of the commencement of the action and after plaintiff had chosen its site for the erection of its poles and wires and had occupied the same upon the several streets and avenues of the city with

its poles and wires, and had placed its wires and instruments and made its preparations to build its said system of telephone communication, defendant, by its agents and employees, placed certain poles and wires for the purpose and intention of using the same for the conduction of electricity for supplying incandescent lights and arc lights, and for power purposes, on the said street and upon the same side of the street so occupied by plaintiff, and along the side of and over and below and against and among the poles and wires of plaintiff, and threatened and was about to place its poles upon the same side of the street occupied by plaintiff, and to place its wires thereon, under and along the side of, and over against and among the wires of the plaintiff and threatened to, and unless restrained by the order of the court would, operate its system of electric lighting by supplying the incandescent and arc lights by an electrical current and also employ electricity for power purposes over and upon the said poles and wires and upon the same side of the streets and avenues, and along and among the wires of plaintiff, and that if defendant was allowed to place its poles and wires as aforesaid and to operate its system of electric lighting and of electricity for power purposes, or either or any of them, over its said poles and wires so placed, or was allowed to place and operate its wires upon the same side of the street parallel with the wires of plaintiff, or was allowed to place and operate its wires at a less distance than ten feet from the wires of the plaintiff and parallel thereto, or was allowed to place and operate its wires, or any of them, across the wires of plaintiff at a less angle than forty-five degrees with the wires of plaintiff, or across the wires of plaintiff at a less distance than five feet from the wires of plaintiff, it would destroy or render valueless plaintiff's poles, wires, and system of telephone in the city of York, and render the same and the property and franchise of plaintiff of no value whatever and would greatly injure the operation of the

plaintiff's system of telephones in other towns and cities in connection with the said system of telephones in the city of York, and would cause great and irreparable injury, etc.

An order of injunction was prayed for restraining defendant, its agents and employees, from proceeding with the poles and wires and other property of plaintiff, as well as its franchise, and from erecting or maintaining or using its wires or conductors of electricity upon the same side of any street previously occupied by the poles and wires of plaintiff, and from erecting or maintaining or using its wires or any wires or conductors of electricity parallel with the wires of plaintiff within a distance of ten feet from its wires erected or to be placed upon its poles and from so placing its wires, or using the same so as to make it interfere, by induction, contact, or otherwise, with the completion or operation of plaintiff's system of telephonic communication.

The defendant answered setting up its authority from · the city of York, to erect its electric light and power system in the city, and that it had commenced the erection of its system, and admitting that it was incorporated for the purpose of furnishing electricity for the purposes named. It was alleged that long prior to the time that plaintiff commenced the erection of its poles with its system of wires thereon in the city, and long prior to the time it commenced the erection of any poles with system of wires thereon for the purpose of connecting any other towns or cities with telephonic communication with York, or for any other purpose whatever, or having spent any money whatever therefor, that plaintiff had full knowledge of the franchise allowed by the mayor and councilmen of the city of York and of the ordinance mentioned in its petition granting to the defendant rights and privileges as an electric and power company; that plaintiff had full knowledge that defendant had erected and constructed an electric light station and an electric light plant at a cost of $6,000, in the city, and that it occupied with its poles and wires

necessarily used in the operation of its light certain streets, alleys, avenues, and public grounds of the city and certain streets named in the answer, to-wit, Lincoln and Grant avenues, and Fifth and Sixth streets; and also that defendant had a contract with a large number of citizens, residents of the city of York, and with the city itself, to furnish and place in their respective places of business and had places designated for arc and incandescent lights, and to furnish electricity for lighting the residences and places of business as well as public grounds in pursuance of said contract, and that it was authorized to place many other lights in the city under new contracts as well as in the carrying out of the contract already made; that long prior to the placing of any poles, wires, or other appurtenances for telephonic purposes in said city by plaintiff, plaintiff informed defendant and the city council of the city of York, and other citizens, that defendant's electric light system, or the franchise granted defendant by said ordinance, would not and could not interfere with plaintiff's telephone system, and that plaintiff intended to put up and would put up poles around the public square in the city forty-five feet in length, and on Lincoln and Grant avenues and on Fifth and Sixth streets and all business parts of said city it intended to and would put up poles forty-two feet in length, and place wires thereon not less than thirty feet from the ground. The answer also contained a general denial of all the allegations contained in the petition not admitted.

To this answer plaintiff filed a reply, admitting the passage of the ordinance authorizing the defendant to erect his electric light and power system, and that the defendant had constructed and erected an electric light station and an electric light plant and had erected certain poles and wires and appurtenances for the operation of electric lights in the city of York, but denied that the defendant had ever lawfully occupied any part of the streets named prior

to the commencement of the action except as it had erected and placed its poles and wires against and among the poles and wires of plaintiff before that time erected and placed by it as set forth in the petition. It was further admitted that the plaintiff had knowledge of the fact of the ordinance referred to prior to the erection and completion of its telephone system, but denied that it had any knowledge of any occupation on the part of defendant of any of the streets named or any part thereof prior to the commencement of the suit except as was fully set forth in the petition.

The plaintiff also denied that it had ever informed defendant or any other person that defendant's electric light wires would not and could not interfere with plaintiff's telephone system; or that plaintiff intended to put up or would put up poles around the public square and along the streets named of the length named; or that plaintiff intended to or would put up its wires not less than thirty feet from the ground. The reply also contained a general denial of all the allegations of the answer not admitted. The findings and decree of the district court were as follows:

"1. That the plaintiff and defendant are corporations duly incorporated under the laws of the state of Nebraska.

"2. That on the 19th day of September, 1887, the mayor and city council of the city of York, Nebraska, duly passed the ordinance set forth in the defendant's answer, which ordinance was duly approved by the mayor of said city, and was published as required by law. That said ordinance authorized the defendant to construct and maintain an electric light power, or gas plant, or both, in said city, and to that end authorized said defendant to use any of the streets, avenues, alleys, bridges, sidewalks, or public grounds of said city, for the purpose of making necessary excavations or erecting poles, posts, or wire therein. Said ordinance requires all poles conveying wires shall reach at least eighteen feet above ground.

"3. That on the 7th day of November, 1887, the mayor and said city council of the city of York passed the ordinance set forth in the plaintiff's amended petition, which ordinance was duly approved by the mayor of said city, and was published as required by law. That said ordinance granted to the plaintiff the right of way for the erection and maintaining of poles and wires, with all the appurtenances thereto, for the purpose of transacting a general telephone and telegraph business through, upon, and over the streets, alleys, and public grounds of the said city of York.

"4. That in pursuance of said ordinance set forth in defendant's answer, the defendant, prior to November 7, 1887, had constructed and erected its electric light station and electric light plant at the cost of about $6,000.00, and had occupied, with its poles, wires, and appurtenances necessarily used in the operation of its electric light, some of the streets and alleys of said city, prior to the erection of any poles or wires by the plaintiff in said city. That said plant so put in by the defendant was for the purpose of both arc and incandescent systems of lighting by electricity. That prior to the commencement of this action the said defendant had erected its poles and wires along the east side of a portion of Lincoln avenue and Grant avenue, and along the south side of a portion of Fifth street and the north side of a portion of Sixth street, of said city, for the purpose of carrying on its said business of electric lighting. That at the time the said defendant erected its poles upon the aforesaid streets and avenues, the officers and employees of the plaintiff had full knowledge thereof, and made no objection thereto. That prior to the erection of the poles by the defendant, the superintendent of construction of the plaintiff company stated to the manager of the defendant company that the same would not interfere with plaintiff's telephone system, and that the officers of the plaintiff company stated to the officers of the defendant company, before the defendant had erected any poles, that

the plaintiff company would erect forty-five-foot poles in the business part of said city of York where it should erect its poles.

"The court finds that each side of the public square or court house square of said city is a portion of the business part of said city ; that the plaintiff has erected on the south side and west side of said square forty-five-foot poles, and on the east and north sides, poles of thirty feet in length.

"The court finds that the defendant occupied the north side of Sixth street with its poles prior to the occupancy thereof by the plaintiff. That the plaintiff occupied Fifth street and Grand avenue prior to the occupancy thereof by the defendant. That prior to the commencement of this action the defendant was proceeding to extend and complete its said system of poles and wires through the city of York, and in many places running parallel to the poles and wires of the plaintiff on the same side of the street.

"5. That prior and at the time of the commencement of this action the plaintiff had erected and was maintaining a system of lines and telephones in at least forty of the towns and cities of the state of Nebraska, and between and connecting the said towns and cities of the state of Nebraska and between and connecting the said towns and cities in which they were so operating, for the purpose of supplying its patrons and the public with a means of communication from point to point in said cities and towns, and also between said towns and cities, by the use of electricity upon said wires operating telephone instruments and other apparatus. That at the commencement of this action the plaintiff had erected and was maintaining and operating a line of its said poles and wires from said city of York, connecting with the other towns and cities of its said system of telephonic connection, and had in connection with its said systems erected and placed poles and wires upon the west side of a portion of Lincoln avenue, upon the east side of a portion

of Grant avenue, upon the south side of a portion of Fifth street, and upon the north side of a portion of Sixth street of said city, had located its central office on the south side of the public square of said city of York, and was proceeding further to extend and complete its system in the city of York.   And in pursuance with contracts made with various citizens in the city of York, the plaintiff had placed certain of its telephone instruments in the offices and residences of many of the citizens of York, and which said instruments were connected with other and said system in said city was in operation for telephonic communication.

" 6.  The court further finds that it will be of great and irreparable injury and damage to the business of the plaintiff and its property, telephone instruments, apparatus and appliances, and will be dangerous to the lives and property of the public and will be dangerous to the patrons of the plaintiff as well as to the public, and will greatly interfere with the use and operation of the wires of the plaintiff for the defendant to use a wire or wires running parallel with the wires of the plaintiff and on the same side of the street with the telephone wires in the use of the plaintiff, for the purpose of conducting electricity for arc lighting.

" The court further finds that the wires of the incandescent system of lighting used by the defendant, when run on the same side of the street as the telephone wires in use and parallel therewith at a less distance from the said telephone wires than eight feet and for a greater distance than three hundred feet, will greatly interfere with the use and operation of the wires of the plaintiff and will cause plaintiff great and irreparable injury as well as damage to both life and property.

" 7.  The court finds that the defendant had the prior occupancy of the north side of Sixth street, west from Grant avenue to the first alley west of Lincoln avenue, and

had the right to use said street with its poles and wires for both arc and incandescent lighting without molestation and interference on the part of the plaintiff.

" 8. The court further finds that it will cause plaintiff great and irreparable injury and will be dangerous to both life and property for telephone and electric light wires to cross each other at a less angle than forty-five degrees or nearer to each other than five feet, unless the wires of the system is boxed with wooden boxes or a strong iron guard wire is suspended midway between the two systems so that the wires of the upper system will not fall upon the lower.

" 9. The court further finds that the plaintiff insists upon the use and occupancy of the said north side of Sixth street with its poles and wires and that the defendant has no right to use the same with its poles and wires and that the plaintiff insists and claims that the defendant shall not occupy with its poles and wires the same side of the streets that the plaintiff uses and occupies with its poles and wires. That the defendant insists that it has the right to and threatens to place its poles and wires upon the same side or the street, and along and parallel with the wires and poles of the plaintiff and in close proximity thereto.

" 10. The court further finds that the defendant can run its wires for incandescent lighting on the same side or the street of and parallel with the telephone wires when not nearer than eight feet from each other, or for a distance of not exceeding three hundred feet, without injury to the plaintiff, provided a strong iron guard wire is suspended at least every hundred feet and midway between the two systems so as to prevent the upper wire from falling upon the lower.

" 11. The court further finds that the greatest number of plaintiff's wires, and on account of the manner in which said plaintiff's system in York was planned, laid out, and erected, the bulk of its business will be done over the wires and poles placed on the south and west sides of the

public square; that but few of its wires are placed on the north side and east side of the square and that the said system was planned by the plaintiff with a view of not placing many wires on its poles on the said east and north sides. The court finds that the plaintiff placed thirty-foot instead of forty-foot poles on the east side and north side of said square, 'the same being a portion of the business part of said city of York,' for the purpose of preventing the defendant from using its poles and wires on said east and north sides of the square, the defendant's poles being twenty-five feet in length before being set.

"It is therefore ordered, considered, adjudged, and decreed by the court that the defendant has the right to use its poles and arc and incandescent wires for electric lighting on the north side of Sixth street between Grant avenue and the first alley west of Lincoln avenue without let or hindrance on the part of the plaintiff, its agents, employees, or servants, and also the defendant has the right to use its poles and incandescent wires for incandescent lighting on the east side of Grant avenue from Fifth street to Sixth street, and on the south side of Fifth street from Grant avenue to Lincoln avenue, when said wires are not more than twenty-two feet from the ground, without interference on the part of plaintiff or its agents, employees, or servants.

"It is further adjudged and decreed, with the above exceptions, that the defendant, its agents, servants, and employees, are perpetually enjoined from using for arc lighting purposes any wires running parallel with and on the same side of the street with a telephone wire of the plaintiff, and the said defendant, its agents, servants, and employees, are also perpetually enjoined, 'with the exceptions above stated,' from using for incandescent lighting purposes any wire which runs parallel with any telephone wire of the plaintiff on the same side of the street which is less than eight feet from such telephone wire, nor in any case for

more than three hundred feet, and not in that case unless a strong iron guard wire is suspended every one hundred feet and midway between the said telephone and electric wires so as to prevent the upper wires from falling on the lower.

"It is further ordered, adjudged, and decreed that the defendant, its agents, servants, and employees, are perpetually enjoined from using any electric light wire which the defendant has already strung or shall hereafter string across any telephone wire of the plaintiff unless said wires cross at an angle of at least forty-five degrees and at least five feet apart, and not in that case unless the wires of one system is boxed in wooden boxes, or a strong iron guard wire is suspended midway between the two systems so as to prevent the wires of the upper system from falling upon that of the lower.

"It is further ordered, adjudged, and decreed that where the wires of the one system already cross that of the other, or where the wires of the one system shall hereafter be constructed across that of the other, it shall be the duty of the company that cross or shall hereafter cross the wires of the other company to construct the boxes or guard wires aforesaid, and for that purpose shall have the right to use the poles of either company.

"It is further ordered, adjudged, and decreed that the plaintiff, its agents, servants and employes, be perpetually enjoined from constructing or using any telephone wire parallel and within eight feet of any electric light wire of the defendant. And it is further ordered that this decree shall take effect and be in force from and after the fifth day of March, A.D. 1888, and each party pay its own costs."

From this decree plaintiff appeals. It is now contended by plaintiff that the nature of the two systems is such that they cannot be successfully and safely operated near together nor on the same side of the street, excepting in a very limited manner and for a very short distance, and that with the greatest precaution. It is contended that the dis-

trict court erred in decreeing defendant any affirmative relief; also that some of the findings of the district court were not supported by the evidence; that some of the findings are inconsistent with each other, and lastly, that the decree is in many respects inconsistent with the findings.

From a careful examination of the pleadings and evidence in the case, we are persuaded that the first contention of appellant is well founded.   We are unable to find anything in the answer of defendant demanding or entitling it to affirmative relief.   In addition to this the evidence submitted to the trial court shows that it does not need and is not entitled to any protection from the telephone system of plaintiff.   We are unable to find any proof that that the proximity of the plaintiff's wires to to those of defendant will render defendant's service any less effective than were they more remote, as it seems to be pretty clearly shown by the evidence that plaintiff would be the only sufferer by the transmission of electricity from defendant's system to that of plaintiff; the electrical force used by defendant being so much greater than that of plaintiff.   There is much said in the testimony about injury to persons and property from the wires of the two systems coming in contact, by falling one upon the other; but of this we presume the municipal authorities of the city of York will have complete control in the exercise of the police powers granted to it for the protection of life and property upon the street, and within its jurisdiction. So much of the decree therefore as enjoins plaintiff and its agents and servants from constructing or using any telephone wire parallel to and within eight feet of any electric light wire of defendant, will be vacated, and the decree to that extent modified, as not properly in the case submitted to the court upon the pleadings and evidence.

The real contest in this case, is as to the right to occupy the streets on the north, south, and east sides of the public square, which is upon the north side of Sixth street be-

tween Lincoln avenue and Grant avenue, on the east side of Grant avenue, between Fifth and Sixth streets, and on the south sides of Fifth street, between Grant and Lincoln avenues, and therefore it is not deemed necessary to notice here all the questions presented and discussed in the very able briefs and oral arguments submitted by the attorneys for either side.

It may be observed, as shown in the findings and decree, that the ordinance under which defendant was given the right to occupy the streets and public grounds of the city, was passed on the 19th day of September, 1887, and that under which plaintiff obtained its right was passed on the 7th of the following November, thus in point of time giving to defendant the first authority to occupy the streets and public ground, but of course not to the exclusion of plaintiff; that in pursuance of the ordinance passed in September, and prior to the time of the passage of the ordinance under which plaintiff asserts its right to occupy the streets and public grounds of the city, defendant had constructed and erected its electric light station and plant, at a cost of about $6,000, and, prior to the erection of any poles or wires by defendant, had occupied with its poles and wires some of the streets and alleys of the city; and in this connection it may be noticed that one of the findings of the district court is to the effect, that at the time of the erection of its poles and wires by defendant, plaintiff and its officers had full knowledge of the fact and made no objection thereto. The proof shows that the building and machinery constructed by defendant prior to the taking of any action by plaintiff toward the erection of its poles and wires, were placed on the alley west of Lincoln avenue, running north and south, and nearly one block north of Sixth street, which is the northern boundary of the public square, and that it constructed a line of poles, thence south along the alley to a point opposite the south side of the square, or on Fifth street, and that upon the pole on the

north side of Sixth street—but within the street—a cross arm was placed facing to the east, along the north side of said Sixth street, and in addition thereto, a pole was set on the north side of that street at the west side of Lincoln avenue, which indicated a purpose to run east along the north side of the square to Grant avenue, and that at the time of the erection of this last pole, plaintiff's poles had been laid along the north side of the square in Sixth street, and on the east side of the square in Grant avenue, but had not been set up. We think it is also sufficiently established that at or prior to this time, the officers and agents of the parties had a conference upon the subject of the occupancy of the streets, when it was said by the representatives of the plaintiff that there would be no conflict, that plaintiff would place its wires upon poles of such length as would enable defendant to erect its poles and wires the height prescribed by ordinance upon the same side of the street without injury to the use of plaintiff's wires; but that when defendant's servants were erecting its lines from the alley to Lincoln avenue, a force of men was put to digging holes on the north and east sides of the square and placing the poles therein, and at the noon hour which immediately followed, the poles were set up and a wire placed thereon, so low that defendant could not place its wires without interference; but that defendant, during the afternoon, erected its poles and placed a wire thereon which extended some two feet above the wire of plaintiff, and at about that time this action was instituted by plaintiff. It is also pretty clearly shown that plaintiff's superintendent had prior to this time represented that the poles to be erected by him within the business part of the city would be at least forty feet long, but that those actually erected were much shorter, and that after plaintiff's agents and officers had induced the agents and officers of defendant to believe that there would be no objection to the occupancy of the same side of the street by both parties under the arrange-

ment made between them, plaintiff's agents and officers so far changed their minds as to conclude that they would so occupy the street as to prevent its occupancy by defendant; and in this there is shown something of a want of good faith on the part of plaintiff's officers and agents. But it is contended that the finding of the court that defendant first occupied the east and south sides of the public square is entirely unsupported by the evidence, since it was shown, by substantially all of the witnesses, that the poles of plaintiff were distributed along the street some four days prior to the erection of the defendant's poles and wires. While it is true that the proof shows these facts, yet for the purpose of examining this finding, the whole of this part of the case must be considered. As we have said, defendant had constructed its building and placed its machinery therein, and had commenced the construction of a line of wires, prior to the construction by plaintiff of its system. If defendant's witnesses are to be believed — and they must in support of the decree — a mutual understanding existed between the officers and agents of the two companies, by which it was fully understood that defendant had already entered upon the construction of that part of its system which was to occupy the ground in dispute. In violation of the representation made to the citizens of the city, as well as to the officers and agents of defendant, that poles forty feet in length would be used, plaintiff caused poles thirty-five feet in length to be scattered along the street. This was observed by one of the agents of defendant; but relying on the representations formerly made to him and others, he supposed that a mistake had been made in placing the poles of that length upon the ground, and that they would be removed, and the agreement carried out. At this time, as we have said, defendant had entered upon the construction of the line of wire, and was not aware of plaintiff's purpose, until a large number of men had commenced digging holes for the erection of

plaintiff's lines upon the poles, which the plaintiff had repeatedly agreed should not be used, and this, in part, at an hour in the day when labor was usually suspended.    During the afternoon, defendant procceded to place its wires on the line in accordance with the ordinance and the previous agreement of the parties.

We are quite certain that plaintiff cannot well deny the correctness of this finding, but it is insisted, in this connection, that defendant cannot insist that plaintiff was estopped by anything its officers or agents had said or done previous to the commencement of the action, for the reason that no estoppel was pleaded in the answer.    While this is true, as a general rule, yet we know of no rule of equity which will permit a plaintiff to mislead a defendant by representations which he does not propose to carry out, and go into equity for the purpose of enjoining such defendant from acting in accordance with the previous arrangement, and then insist that plaintiff's failure must be pleaded as estoppel.    We apprehend that quite the reverse is the rule in cases of this kind.    If plaintiff and defendant had entered upon an agreement upon which the defendant relied, plaintiff could not enjoin defendant from living up to such an agreement upon the ground that it was not pleaded as an estoppel.    While defendant might not be entitled to any affirmative relief growing out of such conditions, without alleging the facts, it is quite clear that its failure to plead the estoppel would not entitle plaintiff to equitable relief which it would not be otherwise entitled to in an action instituted by itself.

But it is insisted that it is impossible to comply with the provisions of the decree for the reason that, by it, defendant is permitted to establish and operate its lines along the north, east, and south sides of the public square, which it is said in the brief is six hundred feet upon a side, while at the same time the court enjoined the defendant from operating its system of wires along and parallel to the

plaintiff's wires for more than three hundred feet. While we are unable to find anything in the evidence which gives the distances upon the sides of the square, yet we apprehend that the plaintiff cannot, for this reason, complain of the decree. The decree is entirely consistent with itself. By it defendant, having first occupied the north, east, and south sides of the public square, is entitled to such occupancy without reference to any claims of right which plaintiff may have. But in other portions of the city, where plaintiff's and defendant's lines come in contact, defendant is not permitted to erect and use its lines, so as to run parallel with the lines of plaintiff, for a greater distance than three hundred feet, and then only when properly protected by guard wires.

The provision of the decree in this respect can have no reference to that part which confers upon defendant the right to the occupancy of the streets named. If plaintiff can so adjust its wires upon the north, east, and south sides of the public square as to render its system in that portion useful, by any kind of protection which it may devise, there is no legal objection to its occupying the part of the street named in the decree, to-wit, the north, east, and south sides of the public square, either by the erection of poles of sufficient height to protect the wires from the influence of defendant's wires, or by any other method which it may adopt, so long as it does not interfere with the right of defendant to use and exercise its own franchise. We see nothing in the case by which defendant could complain if plaintiff should construct its wires upon the same side of the street, and immediately over or under those of defendant, for defendant's wires could not suffer by reason of proximity to those of plaintiff.

It would seem, from the evidence, that plaintiff might make use of the side of the street named by the construction of a system of wires on poles more than forty feet high, and in such case defendant could not complain; but of this,

of course, defendant must judge for itself.    The decree in this particular is right.

Subject to the modification hereinbefore referred to, the decree of the district court is affirmed.

JUDGMENT ACCORDINGLY.

THE other Judges concur.