## Consolidated Electric Light Co. *v.* People's Electric Light & Gas Co.

*Bill in Equity for Injunction, between Rival Light Companies.*

1. *Judicial knowledge of electricity as mechanical force, and as illuminator.*—In the application of electricity for mechanical purposes and as an illuminating agent, these propositions may be stated "as falling within the purview of common knowledge," and therefore of judicial notice : (1) that contact with electrical conductors, when sufficiently charged to subserve the purpose of city illumination, destroys animal life; (2) that in order to properly regulate the apparatus for distributing electric light it is necessary for the employés or servants to ascend the poles and go among the wires; and (3) that two sets of wires, occupying the same space, and charged from different dynamos, located apart and controlled by separate and independent engineers, could not fail to be dangerous in many ways.

2. *Monopolies, and exclusive franchises in public street; redress against.* Monopolies are not favorites of the law, and no one can, under ordinary circumstances, successfully assert and maintain a vested right to the exclusive enjoyment of a public street under a grant by the municipality; yet, where a private corporation, in the exercise of its granted franchise, so acts as to maintain a monopoly and keep down competition, this does not authorize a rival company to attempt redress by measures which would probably lead to a destruction of property, and even of life.

[Consolidated Electric Light Co. v. People's Electric Light & Gas Co.]

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 27th May, 1891, by the appellant, a private corporation "engaged in the business of manufacturing, selling and distributing electricity and electric lights for the purpose of illuminating the houses and streets of the city of Birmingham, and electric power to operate the machines and works of manufacturing enterprises, to which it is duly authorized by law;" and sought by injunction to restrain and prevent the defendant, a rival corporation, from erecting its poles and wires along certain streets already occupied by the complainant. The chancellor refused to dismiss the bill for want of equity, but dissolved the injunction on the denials of the answer; and the decree dissolving the injunction is now assigned as error by the complainant.

R. H. PEARSON, and JAS. H. LITTLE, for appellant.

W. D. BULGER, _contra._

STONE, C. J.—This case brings before us a subject which, in some of its bearings, is comparatively new in jurisprudence. It is the utilization of electricity, alike as a mechanical force, and as an illuminator. This use being relatively new, and probably not perfected in its adaptations, it behooves us to take our steps cautiously—very cautiously—lest our rulings may sanction or encourage conduct which would lead to great destruction of property, if not of life itself. And while we confess ourselves ignorant of the scientific principles on which this new discovery and use are based, it is common knowledge, in which we must be supposed to share, that very great skill and circumspection must be employed in directing and controlling its application. The world has learned that the electric current, when heavily charged, is so instantaneously destructive of life, that it has, in some places, displaced the guillotine and the halter in the execution of criminals. All men know that, when it is sufficiently intensified to subserve the purpose of illumination, or the propulsion of machinery, to come in touch with its charged apparatus is inevitable destruction.

The authorization and supervision of the apparatus necessary to each of the enterprises brought to view in the record before us, are certainly matters which pertain to the municipal government of the city of Birmingham. The privilege or franchise of each company to construct its plant and works within the city must have been first obtained; for no prudent

company or corporation would enter upon so expensive an enterprise, without such authority. And the authority of the city government in the premises would not terminate with the grant of the franchise. It doubtless could, and would, assert its power to prevent any and all abuse of the privilege. Vested rights, properly so called, are respected in judicial administration; but no one, under ordinary circumstances, can assert and maintain a vested right to the exclusive enjoyment ·of a public street. Monopolies are not favorites of the law, and if a street has sufficient width and capacity to admit of more than one public enterprise, without unduly obstructing it as a public highway, an exclusive right should not be granted to one company; and if granted, except under peculiar circumstances, it may, and should be revoked..

In the case before us, it is averred, and not denied, that the Consolidated Electric Light Company—complainant below, and appellant here—first established its plant, and first occupied certain streets with its poles and wires. The attempt of the defendant company to establish its service along the same streets gave rise to this suit. It is certainly true, that the company which, with authority, first occupies a reasonably sufficient space for its works, along a street border, thereby acquires the right not to be molested in its possession. It can not, however, claim more space than is reasonably sufficient for the safe and successful operation of its works.—*Nebraska Tel. Co. v. York Gas & Elec. Light Co.*, 43 N. W. Rep. 126; 43 Amer. & Eng. R. R. Cases, 234; *Grand Rapids E. L. & P. Co. v. Grand Rapids E. E. L. & F. G. Co.*, 33 Fed. Rep. 659.

It is averred in the bill that the defendant company "is now erecting poles along the streets and alleys named in paragraph 4th [those in which complainant was maintaining poles and wires], which extend into the space occupied by orator's wires and conductors, and between said wires and conductors, and that it is now preparing to place, and will immediately place its wires and conductors, unless restrained therefrom by your Honor, which are to be used in a business similar to your orator's, and to be charged with electrical currents the same as ·orator's, on the top of said poles in and among orator's wires, and within orator's right of way, as hereinbefore described, in such manner as will continually interfere with orator's business, and cause orator irreparable injury, and burn out orator's electrical apparatus, and so deteriorate orator's light and power service, and so prevent orator from supplying its customers and lighting the streets of said city, as to become a public nuisance, and will destroy orator's business; and that it will,

[Consolidated Electric Light Co. v. People's Electric Light & Gas Co.]

if permitted by your Honor, greatly endanger the lives of orator's servants, and cause such constant and irreparable injury to your orator that it ought not to be permitted."

The answer of the defendant does not deny the acts and intention done and entertained by it, as charged in the foregoing extract, but denies the danger that would ensue, "with a reasonably prudent management of complainant's system of wires." Its exact language is: "Respondents deny that the character of electrical currents is such, that another wire or system of wires placed in closer proximity would give more frequent contact with orator's wires, and irreparably injure them by deteriorating orator's right and power service, or that it would destroy complainant's business, but aver that, with a reasonably prudent management of complainant's system of wires in said city, another system of wires might be operated along all of the said alleys, streets and avenues in said city, with the greatest security to both complainant and respondent. . . . . Further answering said section, respondents say that, by the erection of respondent's system, and the observance of care on the part of complainant in the tightening of their wires, and the management of their business with a view of serving their business, rather than obstructing respondent's business, the danger to its employès (would) be greatly reduced, rather than increased, by respondent's system they are now proposing to erect, and there would be no difficulty for the servants of complàinant to observe the wires, and to avoid contact therewith."

We think applied electricity has been long enough employed, and its uses and dangers sufficiently ascertained, to authorize the statement of certain propositions as falling within the purview of common knowledge. Among them, may we not state the following: (1.) Contact with electrical conductors, sufficiently charged to subserve the purposes of city illumination, destroys animal life. (2.) To properly regulate the apparatus for distributing electric light, requires that the employès or servants shall ascend the poles and go among the wires. (3.) Two sets of wires occupying the same space, and charged from different dynamos located apart, and controlled by separate and independent engineers, could not fail to be dangerous in many ways.

We cite the following authorities which shed light on the questions we have been discussing: Thompson's Law of Electricity, §§ 43, 92, 93; *Teachout v. Des Moines Broad Guage St. R. Co.*, 33 Amer. & Eng. R. R. Cas. 108; *N. O. Gas Light Co. v. Hart*, 4 So. Rep. 215; *Nebraska Tel. Co. v. York Gas & E. L. Co.*, 43 N. W. Rep. 126.

[Consolidated Electric Light Co. v. People's Electric Light & Gas Co.]

We do not think the specific allegations in complainant's bill, setting forth interference, actual and threatened, with its previously established rights, have been sufficiently answered and negatived by the defendants. Giving to the answer a fair interpretation, and not taking its affirmative allegations into account, we think very great danger and loss would likely ensue to complainant's employés and its property, if defendants be allowed to proceed with their work as projected. We therefore hold that the chancellor erred in dissolving the injunction on the denials in the answer.

We do not feel authorized to presume the city did or would grant to one company the right to occupy all the available space of its streets, unless such monopoly is shown to have been a necessary condition of obtaining the service. We will not discuss this question in detail at this time. Monopolies, as we have said, are not favored, and are never sanctioned unless a necessity for their tolerance is shown, or unless that necessity springs out of the very circumstances of the case, or the transaction.

Many affirmative averments are set up in the answer, which, if true, call loudly for redress. It is charged that complainant is claiming and occupying much more space than is necessary for the amount of service it renders. This is accomplished, it is charged, in various ways; by sometimes occupying both sides of streets, by crossing streets from side to side, by maintaining dead wires, &c. All this is done, it is charged, to maintain its monopoly, and to keep down competition. If these charges are true, they show great public wrongs, which call loudly for municipal interference and correction. They would not authorize a rival company to attempt their redress, by measures which would probably lead to a destruction of property , and of life itself. The conservation of public security is of infinitely more importance, than the success of either of the contending enterprises.

As we have said, we think the denials in the answer are not sufficient to authorize the dissolution of the injunction.

The decretal order of the chancellor is reversed, and the injunction reinstated.

Reversed and remanded.