CUMBERLAND TELEPHONE & TELEGRAPH CO. v. LOUISVILLE
HOME TEL. CO.

(Circuit Court, W. D. Kentucky.   July 20, 1901.)

TELEPHONES—RIGHTS UNDER CONFLICTING GRANTS—PRIORITY OF OCCUPATION.
   Where a city has granted to each of two telephone companies the
   right to construct its line on the same side of the same street, neither
   grant being exclusive, in the absence of any statute or ordinance regu-
   lating the construction and operation of such lines the company which
   is prior in grant and in occupancy has the superior right, and the
   second company is not entitled to plant its poles within the space
   previously occupied by the first company, so that they will extend up
   through its wires, or to occupy with its own wires the space beneath
   them, where it will impair the safety or interfere with the efficient
   operation of the first line.[1]

In Equity.   On motion for preliminary injunction.

Fairleigh, Straus & Eagles and Humphrey, Burnett & Humphrey,
for complainant.
Helm, Bruce & Helm, for defendant.

EVANS, District Judge.   The facts are not·disputed that for as
many as 12 years the complainant, under a contract with the munic-
ipality, has had its telephone line and system constructed and in
operation along Preston street in this city; that its poles have been
standing for that purpose on the west side of that street as far out
as the crossing of the Louisville & Nashville Railroad Company's
track, and thence on the east side of the street to the city limits; and
that upon its poles were several crossbars upon which the complain-
ant's wires were strung.   The city having sold it the franchise there-
for, and having accordingly given to the defendant a permit, as it is
called, to construct a telephone line along the east side of Preston
street to the city limits, a few days before the bill was filed in this
case it attempted to construct its line practically on the territory and
in the space already and long previously occupied by the complain-
ant; the poles of the defendant, when put in, being in many instances
thrust up between the wires of the complainant, and through the
space already occupied by it for the operation of its system.   Upon
the filing of the bill a restraining order was granted, forbidding fur-
ther proceedings in that direction by the defendant until a motion
for a temporary injunction could be heard and disposed of.   In view
of the possibility of many conflicts of a similar character between
the parties to this suit, and in order, if possible, to settle definitely the
grounds upon which all such disputes should· be determined, the court
has devoted much time to the hearing and consideration of this mo-
tion.
   The streets of a city are almost exclusively· under its control, and
it was surprising to find that no regulations had been adopted by
the proper authorities of Louisville for the wise and just regulation

[1]Rights of telephone and telegraph companies to use of streets, see note
to Southern Bell Telephone & Telegraph Co. v. City of Richmond, 44 C. C.
A. 155.

of telephone companies, and for the construction and operation of their lines. If such course had been pursued by the city, it would be a rare instance, perhaps, in which the courts would be called upon to interfere. Telephones are most important factors in the business of the community, and withal are conducted through agencies which are somewhat dangerous to life and property, and there are many reasons why their construction and operation should be most carefully and wisely regulated, and probably upon scientific principles, for the public safety and the good of the community. In the exercise of its power over its streets the city granted a permit to the defendant for the construction of its line along the east side of Preston street. This it had the right to do, as the older right of the complainant, though also secured under contract with the city, was expressly not exclusive. I do not find it necessary to express any opinion upon the question of whether the city had the lawful power to authorize the defendant to take any part of the space occupied by complainant without its consent or without just compensation, because there appears to have been in fact ample room on the east side of the street for the defendant's lines, without actually interfering with the space occupied by complainant. But, even if the city had the power, it did not in terms nor in fact authorize the defendant to occupy any part of the space already appropriated and occupied by the complainant under its agreement with the city, and we think the permission given the defendant, when properly and fairly construed, does not bestow upon it any such right. Neither party to the suit having an exclusive right, though each party has a contract right, we think the only intelligible principle upon which the case can be determined is that of prior occupancy, and the resultant equitable rights. Priority in time, upon familiar principles, ordinarily gives the superior equitable right, and certainly it must be manifest that there is no equitable consideration upon which it can be justly and fairly held that the complainant shall be turned out of what it has appropriated, and of which it is in lawful possession, in order that the defendant shall be permitted to occupy the same thing. It seems to us clear that to allow the defendant to thrust its poles up through the lines of the complainant, to have its employés pass and repass through those lines at will, and to require that the complainant's wires shall thereby be subjected, and that the complainant's employés, to say nothing of other people, shall also thereby be subjected, to any dangers that might result from the electric fluid, would be a conflict and menace to both to which no just principle would require any of them to be subjected, unless under stress of a much greater necessity or upon a much more urgent demand, based upon the public needs, than appears in this case. Indeed, it seems to us, though it is not necessary to decide the question, that there was no reason of any great weight why the defendant could not have crossed over to the west side of Preston street at the railroad crossing, and have proceeded on that side to the city limits. It would probably have been quite as well for it to have applied for permission to do that, and probably it would have been quite as easily obtained. There are many instances where numerous persons have equal rights in a given locality, and yet where the law,

good manners, and common sense equally require that the old maxim, "First come, first served," shall be observed. Every individual in the community has an equal right upon the public streets, and to occupy space thereon necessary for his legitimate purposes there, and yet, from the necessity of the case, any part of the street occupied by one person may not be taken from him by another while he is not in any fair sense obstructing the highway. He cannot properly be shoved out of the place he first occupies in order that another who would like to have it may take it instead. Any other rule would tend to many breaches of the peace. Suppose a crowd should gather in a public place to witness some spectacle. One person first occupying a place of vantage could not rightfully be displaced by any one else without his consent. By a parity of reasoning, in the absence of statute or lawful regulation, if a second telephone company finds the most eligible lines and places already occupied by another company in the same business, it may be its misfortune, but it does not have any right to displace the previous occupant in order to benefit itself. An electric light company ordinarily occupies a space for overhead wires much less wide than does a telephone company for the same purpose, and while its side of the street may not be as desirable, on account of its presence, as the other side, still, if the other side is already occupied by one telephone company when a second desires to do so, and if one or the other must go to the side where the electric light company is located, it must be the latest telephone company. These are among the natural and necessary disadvantages of a late start in the business. They cannot be avoided by a forcible occupation of the space already fairly appropriated and occupied by an earlier claimant. First occupancy, indeed, is the original foundation of title to all property. But, at any rate, we think the applicable and controlling principle is well stated in the following language from the opinion of the Texas court of civil appeals in the case of Paris Electric Light & Ry. Co. v. Southwestern Telegraph & Telephone Co. (decided in 1894) 27 S. W. 902, 5 Am. Electrical Cas. 262, where it was said that "the telephone company's franchise being superior in point of time to that of the appellant, and having exercised its right under its franchise, appellant, in the absence of a superior right, could not interfere with the use and enjoyment of that privilege by stringing wires in such close proximity to those of appellee as to impair the efficiency of appellee's telephone service." This statement of the doctrine is satisfactory to the court, as it seems to be based upon facts similar to those here, and is also well supported by the following authorities: Consolidated Electric Light Co. v. People's Electric Light & Gas Co., 94 Ala. 372, 10 South. 440; Rutland Electric Light Co. v. Marble City Electric Light Co., 65 Vt. 377, 26 Atl. 635, 20 L. R. A. 821, 36 Am. St. Rep. 868; Joyce, Electric Law, §§ 495, 515; Bell Tel. Co. v. Bellville Electric Light Co., 12 Ont. 571. It has been shown that in certain cities in Ohio a second system of telephone wires had been constructed in the manner attempted in this case, but we are without light as to whether there was an agreement between the companies there, or whether it was done under a contract to that effect between the city and

the original company, or whether some statute of the state, subject to which both companies held their franchises, permitted or required it. In the absence of any light upon those matters, we are only called upon to ascertain the general principles which must control this case, and which may not be affected by anything that took place in Ohio.

The court is therefore of opinion that the evidence shows and established the facts to be that for many years the complainant has occupied on the east side of Preston street, south of the crossing of the Louisville & Nashville Railroad Company's track, the line shown to be where complainant's old but short poles are now set up; that it has occupied a space some distance from the ground, about 8½ feet in width, reasonably needed therefor, and where its wires are now strung on said poles; and that to permit the defendant to occupy any portion of that space, or any part of the space between that and the ground, would be injurious to the complainant and its system, and would injuriously conflict and interfere with the operation of its lines. These being the facts as established, it follows that the temporary injunction should be granted to the extent of prohibiting the defendant from occupying or attempting to occupy any part of the space indicated, and from so constructing its line on the east side of Preston street as to touch or interfere with complainant's line or wires in that space. Of course, nothing in this general ruling should prevent the reasonable use of parts of the space above or below that used by the complainant where necessary crossings are to be made. In such instances the crossings should be effected in such manner as not to intermingle the wires of the respective companies, and so as to interfere as little as may be practically possible with the occupancy of that company which first came upon that particular locality.