# COMPANIA ANONYMA DE LA LUZ ELECTRICA DE PONCE

*v.*

# PONCE RAILWAY & LIGHT COMPANY.

### INJUNCTION—DEMURRER TO JURISDICTION.

1. The act of Congress of March 2d, 1901, extends the jurisdiction of this court to controversies where the parties, or either of them, are citizens of the United States or a foreign state.
2. An electric light company acquiring under proper authority a reasonably sufficient space for its lines along a street is entitled thereto, which another must not invade; but it cannot claim more than a reasonable space to the exclusion of another company.

March 20, 1903.

*Mr. J. R. F. Savage,* solicitor for complainant.

---

*Highways—erection of wires and poles.* The authorities relating to rights of telegraph and telephone companies to use public streets and erect poles therein are presented in editorial note to St. Louis v. Western U. Teleg. Co. 37 L. ed. U. S. 810; electric wires in a street as constituting a nuisance subject to municipal regulation, note to Louisiana v. New Orleans City & L. R. Co. 39 L. R. A. 621.

*Electric companies.* In the following editorial notes the authorities dealing with various liabilities of electric companies are presented: *Negligence as to electric wires on or in buildings,* note to Griffin v. United Electric Light Co. 32 L. R. A. 400; *Liability for injuries by electric wires in highways,* note to Denver Consol. Electric Co. v. Simpson, 31 L. R. A. 566; *Regulation of electric companies under the police power of the state,* note to Missouri ex rel. Laclede Gaslight Co. v. Murphy, 31 L. R. A. 798; *Electric wires as constituting a nuisance subject to municipal control,* note to Harrington v. Providence, 38 L. R. A. 306.

*Messrs. Dexter & Hord,* solicitors for defendant.

HOLT, Judge, delivered the following opinion:

The complainant, the Compania Anonyma de la Luz Electrica de Ponce, a Spanish corporation, doing business in Ponce, Porto Rico, sues to restrain the defendant, the Ponce Railway & Light Company, a New Jersey corporation, from erecting poles, stringing wires, and operating same, which are claimed to interfere with the proper use of complainant's poles and wires along its line in said city; also to compel it to remove such poles and wires, already erected, as do so.

Both parties are electric light companies and public utilities; they are quasi public corporations. The pertinent matters alleged are these:

The complainant's franchise was granted in 1897. For several years past it has operated under it, maintaining a line of poles and wires for the transmission of an electric current along the streets and public places. The defendant's franchise was granted in 1902, with the privilege of erecting the necessary poles and wires for the transmission of an electric current. The defendant has erected some poles, and is about to erect others, and string its wires on them upon the same side of various streets and not only in line with complainant's poles and wires, but exactly on the same line in various places; and its poles, being higher than complainant's, pass between complainant's wires, and are not only in contact with them in places, but, in one place or more, force complainant's wires out of their natural course, thereby subjecting them to greater strain; also, in one place, has erected its pole so as to prevent access to the box fastened to one of complainant's poles, which contains machinery regulating the arc light circuit; also that the defendant,

to facilitate the erection of its poles, has disconnected and reconnected service wires leading to complainant's customers from complainant's main wires; that complainant's wires are, therefore, more liable to break, are more liable to induction of the stronger current which defendant intends to use over its wires, and are liable to be interfered with and the circuits interrupted by friction with defendant's poles and wires, complainant's currents deflected, and thereby not only its property, but even its entire system, endangered, and the property and lives of others put in great peril. The bill sets forth, somewhat in detail, the various alleged interferences and probable effects therefrom.

A demurrer is interposed, the grounds being that there is no averment that the amount involved is as much as $1,000, that being the minimum jurisdiction of this court; also that it appears from the bill that both the complainant and the defendant are foreign corporations, neither being a resident of Porto Rico; also that the acts complained of have already been done, and there is an adequate remedy at law.

Upon the hearing of the demurrer, complainant, upon leave, amended its bill, obviating whatever substance there may have been in the first ground of the demurrer. The present hearing is on the demurrer to the bill as amended and the motion of the complainant for a temporary injunction. The grounds of the demurrer are the same as above stated, save the one relative to the amount in controversy is omitted. The bill avers the defendant is about to erect poles and string wires interfering with complainant's line, thereby causing irreparable injury, for which there is no adequate remedy at law, and no relief whatever save by a multiplicity of suits. The troublesome ground of the demurrer is that both parties are foreign corporations, neither be-

Compania Anonyma de la Luz Electrica v. Ponce R. & L. Co.

ing a resident of this district. This objection to the jurisdiction may be made by demurrer.

Formerly an action, save in certain excepted cases, could not be brought against an inhabitant of the United States save in the district in which he might be an inhabitant, or in which he might be found. This was subsequently so restricted that the action had to be brought in the district in which the defendant was an inhabitant, save in cases where the jurisdiction was founded on diverse citizenship suit could be brought in the district of the residence of either the plaintiff or the defendant, it being necessary, though, that the complaint show this fact. Smith v. Lyon, 133 U. S. 315, 33 L. ed. 635, 10 Sup. Ct. Rep. 303; McCormick Harvesting Mach. Co. v. Walthers, 134 U. S. 41, 33 L. ed. 833, 10 Sup. Ct. Rep. 485; Shaw v. Quincy Min. Co. (Ex parte Shaw) 145 U. S. 444, 36 L. ed. 768, 12 Sup. Ct. Rep. 935; Southern P. Co. v. Denton, 146 U. S. 202, 36 L. ed. 943, 13 Sup. Ct. Rep. 44; Re Keasbey & M. Co. 160 U. S. 221, 40 L. ed. 402, 16 Sup. Ct. Rep. 273.

Aside from the acts of Congress relating specially to this court it appears from the above cases it would have no jurisdiction of this one; but the act of April 12th, 1900, creating this court, gave it the ordinary jurisdiction of a district court of the United States, and also jurisdiction of all cases cognizable in a circuit court of the United States. This provision, therefore, gave it various grounds of jurisdiction, as diverse citizenship, etc., but did not alter the rule as above indicated and defined in the cases cited. The act of March 2d, 1901, however, enlarged the jurisdiction of the court. It recites in substance that its purpose is to give additional jurisdiction. It provides that in addition to the jurisdiction given by the act of April 12th, 1900, the jurisdiction of the court shall "extend to and embrace controversies where the parties, or either of them, are citizens of

Compania Anonyma de la Luz Electrica v. Ponce R. & L. Co.

the United States, or citizens or subjects of a foreign state or states, wherein the matter in dispute exceeds, exclusive of interest or costs, the sum or value of one thousand dollars. " [31 Stat. at L. 953, chap. 812.]

While there is no presumption in favor of the jurisdiction of the United States court, and it only has it when expressly given, yet it seems plain that the intention of the lawmaking power was to provide that where the parties, or either of them, are citizens of the United States, or citizens or subjects of a foreign state, this court should have original jurisdiction; and that if such a person be a party to a suit, then this court should take jurisdiction if the defendant be found within the district. Both reason and need, as illustrated in this case, support this view of the legislative intention. Here a speedy remedy is sought relative to a transaction occurring in this district. If the ground of the demurrer be well founded, and the complainant cannot sue here, then it must go to the state of New Jersey, where the defendant was incorporated, to bring its action. The demurrer is overruled.

Undoubtedly great caution should be observed in granting an injunction in this character of case. If improvidently issued, not only serious injury might result to the defendant, but inconvenience to the public. In the use of franchises the interests of the latter are to be first regarded. An injunction, therefore, should not be granted unless the right to it clearly appears. An apprehension, founded in reason, of irreparable and imminent injury must appear.

It is shown by the bill and affidavits filed that in many places the defendant has erected its poles between the feeder wires of the complainant, or between the main and feeder wires; in one instance or more so close as to endanger insulation; that one or more poles are against the complainant's wires, throwing

Compania Anonyma de la Luz Electrica v. Ponce R. & L. Co.

them out of their natural courses; that at another point a pole is not only between the wires, but so close to a pole of the complainant as to prevent access to a box fastened to it, containing the rheostat; that other poles, while not between the wires, are so close as to endanger insulation and create danger of induction, thus not only endangering complainant's circuits and its property, but the lives and property of the public generally, so that it is not merely a question of dollars and cents. It is true it appears that the defendant has used the most improved methods, such as glass insulators, to prevent danger from induction; also that it had the approval of the insular Commissioner of the Interior, of its plants before erecting any of its work. It is laudable that it has so efficiently placed its poles with insulators that there is perhaps not much danger; yet, all this does not alter the fact that the above state of case exists as to its poles and the wires it proposes to string on them, and the works of complainant. It is also true that the complainant has no exclusive right, by virtue of its franchise, to the use of the street, or one side of it; but yet, having first erected its system and been a prior occupant, the defendant has no right to so exercise its privilege as to destroy complainant's works. It is a general rule that when a party with necessary authority has occupied but a reasonably sufficient space for its work along a street border, it thereby acquires a right to the possession of such space, which another must not invade; and when it appears that the wires of the second and subsequent company would interfere with its business, this should be prevented by injunction. The company first in occupation, however, cannot claim more space than is reasonably necessary for the safe and successful operation of its system. It has, therefore, no right to prevent another company from using the same side of the street, and indeed, considering the public convenience and possible danger to the

public, it is no doubt best that telephone and telegraph lines, that use but slight force, should be upon one side of the street, and electric lines upon the other. It is, however, consistent with both right and law that when a company has, in reliance upon its franchise, expended money in establishing its plant and appliances, it should be protected in the use of them, and another company not allowed to infringe upon these rights. Indeed, having thus acquired them, authority could not be given to a second company to infringe upon them, either by the insular Commissioner of the Interior or any other authority. It would, in effect, be taking the property of one person and giving it to another. The right of the subsequent company is subordinate to that of the prior one, as above defined, and must be exercised in such a manner as to not interfere with it. Joyce, Electric Law, §§ 511, 516; 10 Am. & Eng. Enc. Law, p. 867; 3 Cook, Corp. § 925; Rutland Electric Light Co. v. Marble City Electric Light Co. 65 Vt. 377, 20 L. R. A. 821, 36 Am. St. Rep. 868, 26 Atl. 635; Consolidated Electric Light Co. v. People's Electric Light & Gas Co. 94 Ala. 372, 10 So. 440; Western U. Teleg. Co. v. Los Angeles Electric Co. 76 Fed. 178.

It would not be possible, of course, or best for public interest, to prevent all possible danger to the complainant's works. Thus, the neighboring poles of another company may fall and endanger the adjoining line, but this possibility should not prevent the placing of the line of the competing company upon the same side of the street. It is doubtless for the interest of the public that there should be competing lines; and their lines must be so placed as to not prevent the reasonable use of the street for other reasonable modes of communication and travel. It does not appear in this case at what distance an electric current upon the one wire will, by induction, affect the other wire; but this is a matter of evidence. The defendant

cannot be allowed to place its poles or string its wires so near to complainant's line as to endanger its use by induction or otherwise.

Wherever it has placed its poles between the wires of the complainant company, or against them or any of its works, they should at once be removed; and it cannot be permitted to erect its poles either between the wires of the complainant's line or against them or any of its works, or so near to them that there is reasonable danger of induction of the electric current, or of destroying the current passing over complainant's wires, or preventing their use.

To this extent a temporary injunction is granted upon the execution by complainant of a bond, conditioned according to law, in the sum of $10,000, to be approved by the clerk of this court. An order will be prepared accordingly.

It is proper to suggest it is not shown that the defendant cannot place its poles and wires at other places, although on the same side of the street as those of complainant, so as not to interfere with them, and it seems possible that each may use the same side of the street, acting in harmony, with benefit to the public.