RUTLAND ELECTRIC LIGHT CO.,

v.

MARBLE CITY ELECTRIC LIGHT CO.

RUTLAND COUNTY, 1893.

Before: TYLER, MUNSON, START AND THOMPSON, JJ.

*Electric lighting.   Vested right to use streets.   Injunction.*

1.  If a municipality lawfully grants to an electric light company
    the right to erect poles and string wires along its streets for
    the purpose of electric lighting, the company, by proceed-
    ing to expend money upon the faith of such license, ac-
    quires a vested right to use the streets for that purpose
    which the municipality cannot impair.

2.  A second company cannot, under a subsequent grant from
    the municipality, erect and maintain its poles and wires in
    such a manner as to interfere with the first.

3.  Equity will enjoin such interference.

Bill in chancery.   Heard upon the pleadings and a mas-
ter's report at the September term, 1892.   TAFT, chancel-
lor, dismissed the bill *pro forma*.   The orator appeals.
The case appears in the opinion.

*George E. Lawrence* and *C. H. Joyce* for the orator.

The orator, by erecting its poles under license from the
village, acquired a vested right with which neither the vil-
lage nor its licensee could interfere.   Thompson Elect., ss.
36, 39, 43.   *Hudson* v. *Jersey City*, 49 N. J. Law 303;

*Nebraska Tel. Co.* v. *York Gas and Electric Co.,* 27 Neb. 284 ; 2 Dillon Mun. Cor., 830 ; Keasby Electric Wires, 35.

*J. C. Baker* for the defendant.

The orator was granted the right to erect its poles subject to the approval of the trustees. The trustees might direct to have them removed altogether, or might permit the defendant to erect its poles in proximity to them. 2 Dill. Mun. Cor., s. 698 ; *Commonwealth* v. *Boston,* 97 Mass. 555.

The opinion of the court was delivered by

TYLER, J. The orator and defendant are rival corporations organized under the general laws of this State for the purpose of carrying on, respectively, the business of electric lighting in the village of Rutland.

In May, 1886, the orator entered into a written contract with the trustees of the village for lighting the village streets, and acting upon and in compliance with that contract it established a plant, erected poles, strung wires and commenced doing business. It was stipulated that where wires crossed streets they should not be within thirty feet of the ground and that line wires should be at least twenty feet above the ground. The poles were erected at points indicated by the trustees.

Some three years later the defendant, by permission of the trustees, erected poles, strung wires and commenced the business of electric lighting in competition with the orator. Its poles were also placed under direction of the trustees. In some of the principal streets the poles were set on the same side as the orator's poles and quite near to them. The orator employs a system for lighting buildings with incandescent lamps with a current of electricity used on its wires of only one hundred and ten volts, which is so low a current that the wires when charged can be handled with safety.

The defendant uses for its incandescent lamps an alternating current of one thousand volts on its wires in the streets. By means of what are called converters a current of fifty volts is taken into buildings.

When the defendant's wires were first strung upon the poles they did not touch the wires and poles of the orator, but from the effect of storms, from stretching or some other cause, they now sometimes come in contact with the orator's poles and wires and injure them. The wires should not be nearer each other than twelve inches, and the cross pieces upon which they are strung should be at least two feet apart, so that when the wires are loaded with snow and ice, or when swayed by the wind, they will not come in contact. When the wire carrying a heavy current comes in contact with one carrying a lighter current, the heavy current is liable to be inducted into the other wire, which endangers the orator's wires, lamps and plant, and is liable to set fire to buildings, for which the orator would be answerable in damages.

The defendant's poles are not as high as those of the orator; the cross pieces to which its wires are attached are nearer the ground than those of the orator, so that in places the defendant's wires are under the orator's, which renders it difficult and dangerous for the orator's employés to reach their wires for repairs and other purposes. No accident has thus far happened. The defendant's wires are not usually charged with electricity in the day time, but the two plants are entirely independent of each other and the orator's employés have no means of knowing when the defendant's wires are charged.

Where the wires of the parties cross Centre street the orator's is only twenty-one feet above the ground; the defendant's is strung above it, and having sagged, rests upon it. At other places where the respective wires enter buildings they interfere with each other. These are the material

facts found by the master. It is conceded that the village trustees had authority to make the contract with the orator.

The defendant virtually concedes that the orator's contract with the trustees is the measure of its rights. The village, by its trustees, invested the orator with certain rights, and after the orator, relying upon the contract, had expended money in establishing its plant and appliances, the village could not, by an ordinance, have infringed these rights, and clearly it could not confer upon the defendant authority to infringe them.

On the other hand it is not claimed that the orator obtained a privilege of the streets to the exclusion of the defendant, but that the defendant's rights were subordinate to the orator's and must be exercised in such a manner as not to interfere with them. If authorities were required to sustain so plain a proposition those cited upon the orator's brief are pertinent.

In *Hudson Tel. Co.* v. *Jersey City*, 49 N. J. L. 303, it was held that where the city, by an ordinance, under statutory authority, had designated certain public streets in which the company might place its telegraph poles, and the company had expended money in placing its poles upon such streets, the city could not, by subsequent ordinances, revoke such designation; that the company had an irrevocable vested right to use the streets for the designated purpose.

Thompson's Law of Electricity lays down the general rule that when a municipal corporation, under a statutory provision, has, by ordinance or other lawful mode, authorized a telephone company to erect its posts or poles in certain designated streets, and the company proceeds so to erect them and to expend money on the faith of the license so granted, it thereby acquires a vested right to the use of the designated streets so long as it conforms to the conditions of the license; and the license cannot thereafter be revoked by the municipality. So an ordinance authorizing a telephone

company to maintain lines on its streets, without limitation as to time, for a stipulated consideration, when accepted and acted upon by the grantee, by a compliance with its conditions, becomes a contract which the city cannot abolish or alter without consent of the grantees.

It appears that the orator has suffered some damage in consequence of its wires coming in contact with the defendant's; that it is constantly exposed to danger from such contact, and that its men cannot conveniently and without danger reach its wires for the purpose of making repairs and of connecting lines therewith to buildings. We therefore think that the orator is entitled to relief according to the prayer of the bill.

*The pro forma decree dismissing the bill is reversed and the cause remanded ; an accounting is ordered for the damages already suffered by the orator, and the orator may have a perpetual injunction restraining the defendant from maintaining its wires so as to interfere with those of the orator.*