# Thomas H. Marshall v. Town of Brattleboro et als

[160 A.2d 762]

January Term, 1960

Present: **Hulburd, C. J., Holden, Shangraw, Barney and Smith, J J**

Opinion Filed March 2, 1960

*John S. Burgess* and *Ralph Chapman* for the defendants.

*Gibson & Dier* and *A. Luke Crispe* for the plaintiff.

**Barney, J.** The well-pleaded facts admitted by the Town of Brattleboro for the purpose of testing its demurrer and available for weighing the pleas in bar of William Sorton and Thomas Leamey are as follows:

On December 22, 1956 Thomas Harry Marshall went to the Living Memorial Park in Brattleboro to ski. The park is operated by the Town of Brattleboro through its recreation department. On that day that department was operating a rope ski tow at the ski area in the park. William Sorton was employed by the town to supervise the ski area, and Thomas Leamey and one Ernest LaFortune were employed by the town to operate the ski tow, on the day in question. This tow was equipped with a safety switch to prevent injury to persons who were unable or who failed to release themselves from the tow before reaching the upper mechanism. The appellant, Thomas Marshall, while riding up on the tow, had his jacket become entangled in the rope in such a manner that he was carried by the debarkation point, through the safety switch and into the mechanism. As a consequence he received permanent injuries to his right arm and shoulder. A second switch at one end of the tow had been put in a position that rendered the safety switch at the top inoperative. Although fees were ordinarily charged for the use of the facilities, on the day of the accident skiers were being given free use of the tow in return for the service of "breaking out" the ski area. In his complaint appellant denied contributory negligence.

Appellees Sorton and Leamey interposed in bar of the action a plea of a statute of limitations coupled with a general denial; and appellee Town of Brattleboro grounded its demurrer on a claim of sovereign immunity based on the exercise of a function claimed to be governmental in character, that of operating a public park. The court below upheld the pleas in bar and sustained the demurrer. With the permission of the trial court, appellant's exceptions to these rulings were certified to this Court before final judgment.

The statute of limitations pleaded by appellees Sorton and Leamey is 12 V. S. A.  §513, which provides:

> "An action to recover for injuries sustained while participating in the sport of skiing shall be commenced within one year after the cause of action accrues, and not after."

The appellant contends that this statute was intended by the legislature to apply only to "downhill" skiing, while the appellees say that there is no such limitation.  The specfic question raised by this case is whether or not this statute applies to an injury occurring because of the improper operation of a mechanical rope tow device while it is transporting a skier uphill.  Other than those coming under this statute, actions for injury to the person suffered by the act or default of another must be commenced within three years after the cause of action accrues.  12 V. S. A. §512.

■ ■ Among other things, rules of construction of statutes call for a determination of the intent of the legislature by weighing the consequences of various constructions, beginning with the most literal, against the general objectives of the enactment. *First National Bank of Boston* v. *Harvey*, 111 Vt. 281, 292, 16 A.2d 184.  The legislature has seen fit to put a more stringent limitation the time of bringing actions on behalf of persons injured while skiing.  This is not one of the class of statutes called remedial, which are accorded liberal construction.  It is a curtailment of the appellant's remedy for the wrong claimed, and the applicability of the statute must receive strict construction.  *Coral Gables, Inc.* v. *Christopher*, 108 Vt. 414, 418, 189 A. 147, 109 A. L. R. 474.

■ The appellees have asked that this Court take judicial notice of the fact that the use of rope ski tows requires the user to be on skis.  In considering the application of the statute it would be appropriate that juducial notice be taken of all of the varying types of ski tows and lifts possibly to be affected by this statute.  It is reasonable to believe that the legislature had them in mind at the time of enactment.  *Anchor Hocking* v. *Barber*, 118 Vt. 206, 218, 105 A.2d 271; *Brammall* v. *Larose*,

105 Vt. 345, 350, 165 A. 916. Many other of the mechanical devices for transporting skiers up the slopes do not require the user to be on skis, and often function to transport sightseers, both winter and summer. The application contended for by the appellees could mean that a skier and a sightseer, simultaneously injured in the same accident on such a ski lift, would be subject to different statutes of limitation. On the other hand, it is not reasonable to conclude that the legislature intended to confer the benefit of the statute only upon the areas using rope tow devices, thereby burdening the owners of other types of equipment. This is the type of unfair or unreasonable result to be avoided in statutory construction. *Gould* v. *Towslee*, 117 Vt. 452, 459, 94 A.2d 416.

■ The language of the legislature in referring to the "sport" of skiing supports the inference that the statute was not intended to apply to the operation of transporting skiers mechanically. The statute becomes purposeful when its application is restricted to activities on skis where the skier undertakes to exercise independent control of his course, direction, speed and skiing method in the skiing area furnished. The failure of the Legislature to incorporate the word "downhill" as a technical term in the statute can be reconciled with this interpretation as an intent to avoid any limitation on the availability of the statute based on whether a skier was ascending or descending a slope. The risks assumed incident to the sport of skiing, noted in *Wright* v. *Mt. Mansfield Lift*, 96 F. Supp. 786, 791, do not include risk of harm from a mechanically unsafe or improperly operated transporting device not controlled by the skier. The distinguishing aspect of the sport of skiing to which this statute applies pertains to the risk of injury incident to the skier's attempt to cope independently with conditions of snow and ice, terrain, weather and the activities of other skiers, while using the ski area. We hold, therefore, that a skier being transported on a mechanical ski tow who is injured through the operation of the tow is not so participating in the sport of skiing as to be subject to the provisions of 12 V. S. A. §513. This being so, it is unnecessary to determine the effect of the claimed infancy of the appellant on the ap-

plication of the statute of limitations. It was error to adjudge the plea of the statute in bar by appellees Sorton and Leamey sufficent in law.

On the authority of *Lemieux* v. *St. Albans*, 112 Vt. 512, 28 A.2d 373, the appellee Town of Brattleboro maintains its demurrer was properly sustained. On the other hand, appellant not only claims that the Lemieux case has no application here, but goes on to challenge the basis of the sovereign immunity doctrine and the origins of municipal tort immunity as based on the famous case of *Russell* v. *The Men of Devon*, 2 Durn. and East 667, 100 Eng. Rep. 359 (1788). Admittedly, the doctrines supporting municipal immunity from various tort liabilities have met with a great deal of criticism. See Fuller and Casner, "Municipal Tort Liability in Operation" (1941) 54 Harv. L. Rev. 437; Seasongood, "Municipal Corporations: Objections to the Governmental or Proprietary Test" (1936) 22 Va. L. Rev. 910; 18 McQuillin, "Municipal Corporations", §53.23.24 (3d ed. 1950).

The early cases of *Baxter* v. *Winooski Turnpike Co.*, 22 Vt. 114 and *Hyde* v. *Jamaica*, 27 Vt. 443, refer to the *Russell* case for their authority. At page 123, as the doctrine sustaining limited municipal liability, the *Baxter* case states, "It is better that an individual should sustain an injury than that the public should suffer an inconvenience." "Inconvenience" refers to multiple litigation between inhabitants for enforcing equal contribution to a tort recovery. No suggestion that a municipality derives immunity from some sovereign source is made in either the *Russell* case or these early Vermont cases. This doctrine of public convenience over private injury has not been applied where the injury amounts to the damaging or taking of private property for public use, although constitutional guarantees are not referred to, either. See *Griswold* v. *Weathersfield*, 117 Vt. 224, 88 A.2d 829; *Haynes* v. *Town of Burlington*, 38 Vt. 350; and *Winn* v. *Village of Rutland*, 52 Vt. 481. The *Winn* case posited its result on a distinction drawn between certain public duties imposed upon municipalities by their charter which they are required to perform for

the State, and certain powers given in the charter for the purpose of realizing benefits to the inhabitants of the village itself. For the purpose of public duties the municipalities are merely convenient instrumentalities of the State, and no private right of action for negligent acts in connection with these duties arises unless given by statute. The powers given in the charter for the benefit of the municipality are proprietary in nature and carry with them the obligation to exercise the power so as to work no unnecessary injury to persons or property, and to exercise ordinary care and skill in construction. *Winn* v. *Village of Rutland*, *supra*, pages 491 and 492. This case was followed in about three years by *Welsh* v. *Village of Rutland*, 56 Vt. 228, 48 Am. Rep. 762, frequently cited as the leading case in this juridsiction in establishing the tests for municipal tort liability. The old doctrine of the *Russell* case is rejected in favor of a theory reaching the same result, but suggestive of the reasoning of the *Winn* case. At page 234 of the opinion Chief Justice Royce states that political subdivisions of the State "are mere instrumentalities for the administration of public government and the collection and disbursement of public moneys, raised by taxation for public uses, and which cannot lawfully be applied to the liquidation of damages caused by wrongful acts of their officers." He then goes on to set the limits of this immunity in the following language (page 235):

> "When, however, municipal corporations are not in the exercise of their purely governmental functions, for the sole and immediate benefit of the public, but are exercising, as corporations, private franchise powers and privileges, which belong to them for their immediate corporate benefit, or dealing with property held by them for their corporate advantage, gain or emolument, though inuring ultimately to the benefit of the general public, then they become liable for negligent exercise of such powers precisely as are individuals."

This division of function has been alluded to and reaffirmed in a line of cases culminating in *Lemieux* v. *St. Albans*, *supra*, 112 Vt. 512, 28 A.2d 373, and *Farmer* v. *Poultney School District*, 113 Vt. 147, 30 A.2d 89.

The application of this doctrine has produced anomalous results in particular cases. In the case of *Welsh* v. *Village of Rutland, supra,* 56 Vt. 228, the plaintiff was denied recovery for injuries to his wife because the ice upon which she slipped and fell was produced by water escaping from a fire hydrant connected to the village water system while a routine thawing operation was being carried out by the village firemen. But in *Wagner* v. *Village of Waterbury,* 109 Vt. 368, 196 A. 745, the plaintiff prevailed against the muncipality for the death of his son on the grounds that the ice which caused a car to skid and strike the son was on the highway due to a leak in the village water main. *Buguski* v. *City of Winooski,* 108 Vt. 380, 187 A. 808, is another case illustrative of the problems raised by attempts to categorize municipal activities as either governmental or proprietary. In that case a by-pass valve installed in a city water system to enable river water to be used for fire fighting purposes had been negligently left open and allowed pollution to get into the domestic water system causing the death of plaintiff's intestate by typhoid fever. The question of immunity was raised because of the fire protection aspect of the by-pass valve. In an opinion by Chief Justice Powers the Court rejected the argument on the grounds that the negligence did not arise out of the use of the by-pass valve for fire protection, and plaintiff's recovery was sustained.

■ The denial to an individual of the right to recover for injuries negligently inflicted requires a strong policy to support it. When Chief Justice Royce wrote the opinion in *Welsh* v. *Village of Rutland, supra,* 56 Vt. 228, he quoted a discussion by Judge Walker of the Illinois Supreme Court in the case of *Wilcox* v. *City of Chicago,* (1883) 107 Ill. 334, 339, 16 Am. Rep. 652, as a public policy argument he found unanswerable. In essence, the argument is this: If actions against a municipality are allowed to test, by the rules of negligence, the manner in which its fire department carries out its duties, the possibilities are raised that the municipality might have to defend suits and be held liable for all fire damages where its department operated. Both Chief Justice Royce and Judge Walker say that this

would tend to make the municipality an insurer against fire of all property within its limits, contrary to public policy. There is, then, a policy, persuasive to many courts, which says that there are functions carried out by municipalities so necessary and so vital to the inhabitants thereof, that the municipality itself ought to be immune from liability for the methods it uses in performing such functions. This underlying policy is usually expressed in the cases as a determination of the nature of the function as either governmental or proprietary. Unfortunately as we have seen, its application in this form sometimes leads to divergent consequences in cases factually similar. However, in over one hundred and ten years the doctrine has become so firmly established in our law that it cannot be lightly set aside, and we will not do so here. Furthermore, the legislature has already undertaken legislation to ameliorate possible harsh consequences or the existing doctrine by the passage in 1959 of what are now 8 V. S. A. § 7a, 7b and 7c. These provide for the waiver of sovereign immunity by the State, county or municipal corporation by the purchase of certain liability insurance coverage, a waiver limited to the extent of the coverage purchased. Provision is also made to provide liability protection for employees of the State. It should be noted that the immunities as to negligent acts of municipalities do not attach to their employees. See *Kremer* v. *Fortin*, 119 Vt. 1, 117 A.2d 245; *Reid* v. *Abbiatti*, 13 Vt. 233, 32 A.2d 133; *Ferraro* v. *Earle*, 105 Vt. 243, 164 A. 886.

The duty of this Court is, therefore, to test the issue of municipal immunity in the light of the purpose of the doctrine as expressed by our cases. It is fitting that we have in mind the unquestioned extension of municipal activities into fields once felt to be inappropriate for governmental bodies. The doctrine of immunity being in derogation of the right of an individual to recover for his injury, and potentially harsh in application, as we have already noted, we are justified in a careful weighing of public versus private interest. Extension of immunity ought to be granted only on the basis of strong policy reasons. In individual cases the presence or absence of supporting policy is implicit in describing the activity in-

volved as governmental or proprietary. Some cases make the presence or absence of a monetary return to the municipality decisive. Admittedly this may be a helpful test, but it may be outweighed by other factors. See the discussion in 18 McQuillin, Municipal Corporations, §53.29 at page 212, and cases cited.

The appellees say that since this case involves a park, *Lemieux* v. *St. Albans, supra,* 112 Vt. 512, 28 A.2d 373, is determinative. That case held that the construction of a public playground was a governmental activity, making the municipality immune from tort liability in connection with it. Although it was not essential to the decision, the Court went on to say that the maintenance and operation or a public park is a governmental function. The test is said to be whether the benefit from the exercise or the function accrues to the municipality in its corporate capacity or to the public generally. To be proprietary the benefit must accrue to the municipality in its corporate capacity. This is not the test this Court finds persuasive for justifying immunity.

■ The holding of the Lemieux case on its facts is not questioned. This Court feels, however, that there is a sufficient difference between the general activity of the construction of a playground and the operation within that playground of motor-powered mechanical recreational equipment to justify a different result in this case. The policy that favors the construction of recreational areas by municipalities for its citizens is not so vital to the community, so essential a municipal operation, as to require that immunity from liability for carelessness be conferred willy-nilly on any and all activities the municipality may carry on within the confines of the recreation area. Insofar as this represents a departure from the doctrine of the Lemieux case, the same is overruled.

■ Using the conventional language of our cases, this Court holds that the operation of a mechanical rope ski tow in a public park by a municipality is a proprietary activity to which no immunity for tort liability attaches. The demurrer of the appellee Town of Brattleboro should have been overruled.

*The order sustaining the pleas in bar of defendants William Sorton and Thomas Leamey, and sustaining the demurrer of the defendant Town of Brattleboro, is reversed. The pleas in bar are adjudged insufficient and the demurrer is overruled. The cause is remanded with leave to the Town of Brattleboro to replead if it be so advised.*