### Vermont Gas Systems, Inc. v. City of Burlington

[286 A.2d 275]

No. 39-70

Present: **Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed April 8, 1971

76

*Yandell, Page & Archer,* Burlington, and *Paterson, Gibson, Noble & Brownell,* Montpelier, for Plaintiff.

B. *Allan Bruce,* and *L. John Cain,* Burlington, for Defendant.

**Barney, J.** The Urban Renewal Project in the City of Burlington discontinued some sections of certain streets and razed a number of residential buildings. As a consequence, the plaintiff had to discontinue and abandon certain of its service lines, capping and purging them. Since part of its distribution grid was interrupted by these discontinuities, the plaintiff also had to run a new distribution line along another street in order to maintain service to the northern end of the city. This represented a considerable expense to the plaintiff company and they sued the city to recover it. The trial court awarded damages. The defendant contests the award, and the plaintiff has also appealed, questioning the amount of the award.

The placing of the gas mains in question within the limits of the city streets was done pursuant to authority granted by an Act of the legislature in 1852 to a predecessor company. The gas company was not obligated to make any payment for this privilege, but was subject only to the requirement that public travel not be unnecessarily impeded in the laying of its pipes and appurtenances, and that the streets, sidewalks, lanes and the like should be left in as good condition as before the making of the installation. The gas lines in question here were installed pursuant to this authority. It was not necessary for the company to exercise rights of eminent domain, as provided by 30 V.S.A. § 110.

No vested interest can be acquired in the location of streets and highways so as to impinge upon the judgment of those public officials whose duty it is to build, locate and relocate these highways. *Nelson* v. *State Highway Board,* 110 Vt. 44, 54, 1 A.2d 689 (1938). The streets here represent acquisitions by the City of Burlington, and are not property of the plaintiff. Indeed the plaintiff could not, by its powers of eminent domain, acquire a property interest in these streets, since they are already dedicated to a public use. *Vermont Hydro-Electric Corp.* v. *Dunn,* 95 Vt. 144, 149, 112 A. 223 (1921). As that case states, any deviation from this rule can come about only through legislative authorization. This sort of authorization was in fact given, granting a continuance

of a right of way for an electric line after discontinuance of the use of a railroad right of way. *Proctor* v. *Central Vermont Public Service Corp.*, 116 Vt. 431, 434, 77 A.2d 828 (1951).

■ In the case before us, the legislature handled the matter differently, literally giving the gas company the right to use existing streets, subject to its duty to restore them after excavation. The position of the gas company is that of an ancillary rather than a primary user of the roadways with its interest in the public way subordinate to that of the public. *Port of New York Authority* v. *Hackensack Water Company*, 41 N.J. 90, 195 A.2d 1, 4–5 (1963).

■ The right to close streets is specifically accorded the municipality by the provisions of 24 V.S.A. § 3208(10). The privilege accorded the gas company to use streets as part of its distribution network is necessarily subject to the exercise, by the municipality, of this power. The company can no more insist upon the continuance of a street in order to preserve its distribution design than it could to insist on the creation of a street in order to extend its service without the cost of condemnation. This plaintiff has no compensable property interest associated with the laying out or discontinuance of streets or roadways, with respect to their availability as locations for the installations of gas lines.

This does not entirely dispose of the matter, however. Associated with the complaint for the loss of certain rights of way is a claim for compensation for the gas line installation left behind in the Urban Renewal Project. The findings put the value of the lines abandoned at $5,130.00, based on their remaining useful life. Capping and purging them amounted to another $1,700.00. Ninety service lines were discontinued at a cost of $2,250.00. In addition, to bridge the interrupted portion of the distribution system required that a new main be laid in a new location. This required the installation of a new regulator. The cost allocable to this change is $10,353.00, and the cost of the whole relocation and abandonment, by the findings, comes to a total of $19,433.00.

The claim of the plaintiff is based in part upon the position that the abandoned pipes are fixtures, and thus within the definition of real property given in 24 V.S.A. § 3201(15).

The basis for abandonment of the pipes, according to the plaintiff, is that, whatever their remaining useful life, their removal is not economically feasible.

The law of fixtures is of no help to the plaintiff in this situation. If the position is taken that the pipe installations have become so much a part of the land in which they have been installed as to be part of the real estate, as the impracticability of removal would certainly suggest, then title to them follows the title to the land itself. This title, admittedly, is not in the plaintiff, and would suggest that, upon installation, it lost any compensable interest based on title. *First National Bank* v. *Nativi*, 115 Vt. 15, 18, 49 A.2d 760 (1946). The concept that keeps these pipes chattel, the intention and ability to remove them, even as applied to trade fixtures, has, therefore, been rejected by the plaintiff. See *Sherburne Corp.* v. *Town of Sherburne*, 124 Vt. 481, 484–85, 207 A.2d 125 (1965). Certainly this is not the consequence the plaintiff is contending for, and we must recognize that, even though the law it cites is persuasive against it.

■■ Laying aside the concept of fixtures, and advancing directly to the right of the municipality to, in effect, order the discontinuance of the use of this part of the gas distribution system brings us closer to the issue as sought to be raised by the plaintiff but, again, it is compromised by the fact that the removal is not prohibited. *American Steel & Iron Company* v. *Taft*, 109 Vt. 469, 472, 199 A. 261 (1938). Returning to the consideration raised earlier in the opinion, installation of a distribution service in a gratuitously supplied right of way does not permit the utility to affect the good faith decisions of the municipality as to the principal use of the right of way for street purposes. *Nelson* v. *State Highway Board, supra,* 110 Vt. at 54. The legislative license to occupy the streets with these installations was at all times subject to the paramount right of the municipality to discontinue or relocate such streets. With the termination of this license with respect to a particular street the plaintiff was left without any interest in the land of any kind, and no compensable interest, as against the municipality, existed either before or after termination.

See *Powers* v. *Trustees of Caledonia County Grammar School,* 93 Vt. 220, 239, 106 A. 836 (1919).

The interest of the municipality in the lands upon which the distribution lines were located gave it the right to ask for their removal, insofar as these pipes might be treated as chattels. The utility elected not to do so. The Urban Renewal Authority exercised by the municipality, where necessary, was based upon the right to exercise the police power. 24 V.S.A. § 3203. Under this authority, for the safety of subsequent users of the land in the project, it was appropriate for the municipality to require that steps be taken to render pipes abandoned in the ground safe and free of inflammable gas residues. This kind of requirement is a burden upon utilities and holders of public franchises which does not require reimbursement. *Bacon* v. *Boston & Maine Railroad,* 83 Vt. 421, 454, 76 A. 128 (1910).

In short, the utility's relation to the roadways of the municipality may be characterized as a permissive use, subordinate and ancillary to the principal and primary right in the public to locate and relocate that use according to its needs. This relationship is not one that a utility, exercising this permissive privilege, can enlarge or perpetuate as against the public, by undertaking construction investment irrecoverable on alteration of the street line. In *Port of New York Authority* v. *Hackensack Water Company, supra,* 195 A.2d at 4, the position of a utility in the situation of this plaintiff was described in this manner:

> "It is permitted to use the public way because it serves a public interest, but since its venture is for gain and since in any event the primary purpose of the public easement is the public's own use of it, the utility's interest in the public way is subordinate to the public's enjoyment of it. Hence, the utility runs the risk that the public welfare may require changes in the road which will call for relocation of its facilities."

With that statement this Court is in full accord.

■ It is suggested that, contrary to the foregoing, the existence of a compensable property interest in the plaintiff has been conceded by the joining of the plaintiff as a party

to the necessity hearing held in connection with the Urban Renewal Project. To treat this as an admission would be unwise, unjustified and contrary to sound public policy. The joinder of parties to such proceedings should be undertaken in a manner to embrace all those who have the slightest interest or possibility of an interest. If the initiating party is to be held to acknowledge the validity of the most tenuous or the most controversial of interest in condemned property by such joinder, the necessary consequence would be to narrow the giving of notice in order to avoid conceding an interest. This is unsound, and no such effect will be attached to the mere notice of inclusion in a necessity hearing.

The plaintiff relies on *Russell* v. *Sebastian*, 233 U.S. 195, 58 L.Ed. 912, 34 S.Ct. 517 (1914), and *Los Angeles* v. *Los Angeles Gas & Electric Corp.*, 251 U.S. 32, 64 L.Ed. 121, 40 S.Ct. 76 (1919), as support for its claim that the discontinuance of the streets in question impaired the right granted to it by the legislature to lay gas lines in the streets. The *Russell* case involved the barring of any extension of gas lines further along existing streets unless the company purchased a further franchise from the municipality. The *Los Angeles* case involved the requirement that a utility remove its poles and wires in order to make way for a competing municipal system. In each case the franchise to use the streets originated in the provisions of the state constitution. It is clear that the actions in these cases were purposefully directed at the restriction or abolition of the business of the utilities involved. The purposes of the municipality could not support any claim for resort to the police power, and the infringement of the utility franchises was unquestionable. Vermont law treats similar situations in like manner. *Rutland Electric Light Co.* v. *Marble City Electric Light Co.*, 65 Vt. 377, 380, 26 A. 635 (1893).

That is not the situation here. As has been pointed out, the position of this plaintiff would, where gas pipes have been installed, impose a restraining consideration on the relocation or closing of streets.

The state delegates to municipalities extensive powers in respect to streets as public highways and their use. *Barre* v. *Barre & Montpelier Traction Co.*, 88 Vt. 304, 309, 92 A. 237

(1914). Under 24 V.S.A. § 3208(10) this includes the authority to close or vacate streets. As has already been noted, this is a grant of the right to exercise the police power for this purpose. 24 V.S.A. § 3203. The appropriate exercise of this power is not a taking of property without compensation or an impairment of contractual obligation. *Western Union Tel. Co.* v. *Burlington Traction Co.*, 90 Vt. 506, 518, 99 A. 4 (1916). The rights of the utility are, at all times, subject to the lawful exercise of this power. The right and privilege of the company to use existing streets is not thereby unconstitutionally infringed. Its invocation in this matter was legal.

*Judgment reversed and judgment entered for the defendant to recover its costs.*

## On Reargument

■ **Barney, J.** On reargument a majority of the Court were convinced that the provisions of the Urban Renewal Act do represent an intent, not fully presented on original argument, on the part of the enacting authority, that reassigns some of the burden of condemnation of utility property. It is their view that it was the purpose of the provisions of Chapter 71 of Title 24 of the Vermont Statutes Annotated to place upon the municipal taxpayers, rather than the rate-payers, the burden of reimbursement for real property taken in the carrying out of urban renewal, even though this property was already dedicated to a public use.

■ The definition of real property in 24 V.S.A. § 3201(15) is sufficiently broad to include the pipes and fixtures lost to the utility by virtue of the project. 24 V.S.A. § 3209 both authorizes the condemnation and, in the view of the majority, provides an exception to the usual rule by permitting the compensation for "property already devoted to a public use."

The findings state the value of the property required to be abandoned on account of this project to be $5,130.00. The plaintiff is entitled to reimbursement to that extent.

*The judgment of the county court is amended to provide that the plaintiff recover from the defendant the sum of*

*$5,130.00, plus interest at the legal rate from August 30, 1968, to the present, and, as so amended, the judgment is affirmed.*