# Vermont Gas Systems, Inc. v. City of Burlington

[571 A.2d 45]

No. 88-169

Present: Allen, C.J., Dooley and Morse, JJ., and Barney, C.J. (Ret.) and Keyser, J. (Ret.), Specially Assigned

Opinion Filed December 1, 1989

*Paul, Frank & Collins, Inc.*, Burlington, for Plaintiff-Appellant.

*Joseph E. McNeil* and *William F. Ellis* of *McNeil, Murray & Sorrell, Inc.*, Burlington, for Defendant-Appellee.

**Dooley, J.** Vermont Gas Systems, a public utility, appeals the trial court's decision which denied it recovery of the costs to relocate gas pipes under the City of Burlington after being required to do so by the City. We affirm.

The facts in this case are simple. Plaintiff, Vermont Gas Systems, is a public utility which provides gas service to retail customers in several Vermont municipalities, including the City of Burlington. Plaintiff's gas pipes have been buried beneath Burlington streets for a number of years under a franchise origi-

nally granted to its predecessor. During the summer of 1986, defendant, the City of Burlington, began construction on a new segment of a combined storm and sanitary sewer line, known as the Ravine Sewer Project. The trial court found that this segment, a small section of the sewer system as a whole, was part of an overall sewer improvement project intended in part to reduce the flow of pollution into Lake Champlain.

As a result of the defendant's sewer project, plaintiff was required to relocate its gas lines lying within the rights of way of Pearl, South Union and College Streets. Plaintiff relocated the gas lines at considerable expense and then brought this suit to recover its costs, $105,527.16, which were stipulated to by both parties as reasonable.

Plaintiff moved for summary judgment claiming that, as a matter of law, it was entitled to recovery. The trial court denied this motion, stating that the likelihood of success depends on whether the sewer project is governmental or proprietary in nature and that disputed issues of fact underlie the proper characterization. The trial court determined that if the project were held governmental, then plaintiff would not be entitled to reimbursement. If, however, the City's project were proprietary rather than governmental, then plaintiff would be entitled to recover costs. Following a one-day trial, the court held that "the project in question is fairly characterized as governmental. Private gas pipes moved to permit this improvement were moved for a governmental purpose, and no compensation is due for [plaintiff's] forced relocation."

On appeal, plaintiff gas company frames the issue as whether the Ravine Sewer Project represents a governmental or proprietary function. We find that plaintiff states the issue too narrowly. Accordingly, we start with a discussion of the relevancy of this distinction in utility relocation law.

This Court has applied the governmental/proprietary doctrine to utility relocation law on only one occasion. See *Vermont Gas Systems, Inc. v. City of Burlington*, 130 Vt. 75, 286 A.2d 275 (1971). In that case, Vermont Gas abandoned and relocated its service lines when the City of Burlington razed a number of residential buildings and discontinued sections of several

streets. The Court never discussed whether the City's action was governmental or proprietary in nature. Rather, the Court seemed to assume that the action was governmental, stating that the "legislative license to occupy the streets with these installations was at all times subject to the paramount right of the municipality to discontinue or relocate such streets." *Id.* at 79, 286 A.2d at 277–78. The Court therefore denied the gas company recovery. On reargument, however, the Court concluded that the Urban Renewal Act itself required the municipality to reimburse the utility for real property taken in the carrying out of urban renewal. Thus, the Court found that, by statute, the gas company was entitled to partial recovery.

The governmental/proprietary distinction has a long history in the area of municipal tort liability. For example, in *Winn v. Village of Rutland*, 52 Vt. 481 (1880), the Court held that when the village negligently constructed a new sewer system, it was liable to a landowner who was injured when the sewer overflowed onto his property. More recently, when a plaintiff claimed that he was injured by falling into a partially uncovered sewer catch-basin, the Court held that "those functions which are governmental are protected by the doctrine of sovereign immunity, while, in contrast, the governmental unit will be liable for injuries caused or sustained in furtherance of its proprietary functions." *Dugan v. City of Burlington*, 135 Vt. 303, 304, 375 A.2d 991, 992 (1977). The use of the governmental/proprietary distinction, however, has rarely strayed from tort cases in which sovereign immunity was the claimed defense.

Beyond the arena of tort liability, the governmental/proprietary distinction has led a perilous life in other jurisdictions. This distinction has led to unpredictable and diverse results in utility relocation cases. While some courts have held that municipally operated sewer systems, water, lighting and power utilities, and mass transit are governmental activities, other courts have found these same activities to be proprietary. See *Northwest Natural Gas Co. v. City of Portland*, 300 Or. 291, 299, 711 P.2d 119, 124–25 (1985). When faced with a utility relocation issue similar to the one before this Court, the Supreme Court of Colorado stated: "Cases and commentators have criticized the

governmental/proprietary distinction as unhelpful, inherently unsound, and 'probably one of the most unsatisfactory known to the law, for it has caused confusion not only among the various jurisdictions but almost always within each jurisdiction.'" *City & County of Denver v. Mountain States Telephone & Telegraph Co.*, 754 P.2d 1172, 1174 (Colo. 1988) (quoting 3 K. Davis, Administrative Law Treatise § 25.07, at 460 (1958)).

Although courts generally fail to analyze the "basis for the distinctions between governmental and proprietary activities," those that do "seem to assert that governmental and proprietary functions are distinguishable based on whether the public bodies are engaged in activity that is (1) essential or necessary for the government to perform, or (2) traditional for the government to perform." *Northwest Natural Gas*, 300 Or. at 300, 711 P.2d at 125. Both of these tests, however, have proven unworkable. In general, when courts utilize the "essential or necessary" mode of analysis, nearly all municipal activities are deemed governmental rather than proprietary. See, e.g., Wells & Hellerstein, *The Governmental-Proprietary Distinction in Constitutional Law*, 66 Va. L. Rev. 1073, 1103 (1980); see also *Northwest Natural Gas*, 300 Or. at 301, 711 P.2d at 125. Likewise, the "traditional function" test is often based on outmoded ideas. For example, while mass transit systems were generally operated by private industry at the turn of this century, due to economic necessity, by the mid-1960's many mass transit systems were publicly operated. See, e.g., *Northwest Natural Gas*, 300 Or. at 299–304, 711 P.2d at 125–26.

This Court has also experienced some difficulty distinguishing between governmental and proprietary functions. In *Town of Stockbridge v. State Highway Board*, 125 Vt. 366, 369, 216 A.2d 44, 46 (1965), this Court stated, "[t]he line between municipal operations that are proprietary and those that are governmental is not clearly defined. The basis of the distinction is difficult to state, and there is no established rule for the determination of what belongs to the one or the other class." In *Fuller v. City of Rutland*, 122 Vt. 284, 171 A.2d 58 (1961), the plaintiff claimed that she was injured when she drove into a hole in the street that the City of Rutland had negligently exca-

vated in an attempt to locate a sewer. In order to resolve the issue of liability, the Court looked to the purpose of the municipality's actions. The Court reasoned that if the purpose for which the excavation was performed was for the maintenance of the highway, then it constituted a governmental function which thereby renders the city immune from tort liability. The Court found, however, that the city was performing a proprietary function because the purpose of the excavation was to maintain the sewer system. Therefore, the city was subject to tort liability. Thus, the Court held that the city's liability arises from the purpose of its activity rather than the nature of the activity itself. *Id.* at 286–87, 171 A.2d at 59–60.

Despite the inherent difficulties, this Court has continued to apply the governmental/proprietary doctrine in the area of torts for significant policy reasons. The doctrine strikes the best available balance between the municipality's need to function for the good of its citizens and the injured tort victim's right to recover from such injuries. It ensures that the municipality's sovereign immunity is not applied so broadly that it denies unnecessarily a remedy to a party injured by a municipality's actions. See, e.g., *Marshall v. Town of Brattleboro*, 121 Vt. 417, 425, 160 A.2d 762, 767–68 (1960).

While public policy reasons support the retention of the governmental/ proprietary distinction in tort liability cases, there is no reason to carry this fine-lined distinction into utility relocation law. On the contrary, this distinction has lead to inconsistent results in other jurisdictions and it is simply not necessary in this context. Utilities voluntarily enter into transactions with municipalities and, as a result, have protections available to them that are not ordinarily available to tort victims. In the first instance, the utilities can bargain with the municipalities to allocate the risk, by contract, for just this type of event. Further, municipalities must still "act constitutionally, within applicable statutes, and within the authority of their charters and ordinances." *Northwest Natural Gas*, 300 Or. at 302, 711 P.2d at 126. Finally, the utility can adjust its rates to reflect the costs of relocation.

■ For the foregoing reasons, we conclude that the governmental/ proprietary distinction has no applicability in the area of utilities relocation law. Rather than depending upon an unnecessary and unworkable distinction to resolve this issue, this problem should be analyzed "under state statutes, applicable municipal charters and ordinances, and the specific agreements entered into by the parties." *Id.*

■ We affirm the trial court's decision on different grounds. Although the trial court based its holding on the governmental/ proprietary distinction, the judge also suggested a different approach which did not rely on this distinction. He stated that a more modern view of the problem is that:

> the grantees of a franchise to use municipal premises or property take it subject to the right of the municipality to make public improvements whenever and wherever the public interests demand, and if the improvement causes injury to the grantees usually they cannot recover damages from the municipality. The grantees of a franchise take the risk of their location and should be required to make changes, due to public improvements, at their own cost and charge.

(quoting 13 E. McQuillen & J. Reinholtz, Municipal Corporations § 37.37, at 120 (3d ed. 1987)). We agree with this proposition. The general rule "recognizes that the right ·of a public utility to locate its facilities on or beneath a public right-of-way is impliedly limited by those municipal services which further the health, safety, or welfare of its citizens." *City of Denver*, 754 P.2d at 1176. Thus, in the absence of a statute or contract agreement to the contrary, the utility must pay the cost to relocate its facilities whenever the municipality reasonably requires it in the exercise of its police power to protect the health, safety or welfare of its citizens. *Id.*

When a business uses public property at the pleasure of the taxpayers, it is unreasonable to expect the taxpayers to pay the cost of relocating the business when the taxpayers reasonably decide to change the use of their property. Facilities used in providing public services, like those in this case, require periodic maintenance and improvement. The private business nec-

essarily must bear the risk that changes in the public interest or needed improvements will add costs to its business activities. Whenever a commercial enterprise utilizes a public right-of-way, it accepts the risk that it may be required to change its location at its own expense as the public convenience or security requires. A utility company's right to place pipes beneath the public streets is subordinate to the superior rights of the public whenever the public interest demands.

In this case, the City of Burlington required Vermont Gas to relocate its gas mains so that the City might construct a sewer system. Sewer construction necessarily advances the health, safety and welfare of Burlington's citizens. Vermont Gas has not shown that any contractual agreements or statutes require the City to pay for any or all of the relocation expenses. Therefore, we hold that the trial court correctly concluded that Vermont Gas must bear the cost of relocating its facilities.

*Affirmed.*