Frances GRETKOWSKI, Plaintiff,

v.

CITY OF BURLINGTON, Defendant.

No. 2:97–CV–271.

United States District Court,
D. Vermont.

July 9, 1998.

Robert W. Katims, Hoff, Curtis, Pacht, Cassidy & Frame, P.C., Burlington, DC, for plaintiff.

Nancy Goss Sheahan, McNeil, Leddy & Sheehan, P.C., Burlington, VT, for defendant.

*OPINION AND ORDER*

(Paper 10)

NIEDERMEIER, United States Magistrate Judge.

The defendant City of Burlington ("Burlington") has moved for summary judgment pursuant to Fed.R.Civ.P. 56 in this personal injury case, arguing that it is statutorily immune from liability and it is immune from liability as a governmental entity. Paper 10. Jurisdiction is based on diversity pursuant to 28 U.S.C. § 1332.[1]

For the following reasons, I GRANT Burlington's motion.

*FACTS AND DISCUSSION*

Plaintiff Frances Gretkowski was injured on August 20, 1994 while walking

---

1. The parties have consented to proceed before the Magistrate Judge pursuant to 28 U.S.C. § 636(c).

along the Burlington Bike Pathway ("Bikepath"), which is owned and maintained by Burlington. Paper 1, ¶¶ 6, 7. Gretkowski alleges that her injuries were caused by Burlington's negligent maintenance of the Bikepath. Paper 1, ¶ 11. Burlington contends that 19 V.S.A. § 2309 grants it immunity. Paper 10 at 7. Burlington also claims that the common law doctrine of municipal immunity protects it from liability. Paper 10 at 3–4. These defenses are based on Vermont law.

### I. *Summary Judgment*

Summary judgment shall be granted if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). A fact is material when it affects the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There is a genuine dispute over a material fact when the evidence requires a factfinder to resolve the parties' differing versions of the truth at trial. *Id.* at 249, 106 S.Ct. 2505 (citing *First Nat'l Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569, *rehearing denied*, 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968)). "Uncertainty as to the true state of any material fact defeats the motion." *Gibson v. American Broad. Co.*, 892 F.2d 1128, 1132 (2d Cir.1989).

In analyzing the record, the court must view the evidence in the light most favorable to the nonmoving party and resolve all ambiguities in its favor. *Dister v. Continental Group Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988). The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those parts of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the nonmovant may not rely on conclusory allegations or mere conjecture, but rather must offer specific facts to support a verdict in its favor. *Matsu-shita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (construing Fed. R.Civ.P. 56(e)). As to any claim or essential element thereof for which the nonmoving party bears the burden of proof at trial, the nonmoving party must make a showing sufficient to establish the existence of that claim or element. *Celotex*, 477 U.S. at 322–25, 106 S.Ct. 2548.

■ The question before this Court is whether Burlington is immune from liability under either 19 V.S.A. § 2309 or the doctrine of municipal immunity.

### II. *Statutory Immunity*

Section 2309 states

No landowner shall be liable for any property damage or personal injury sustained by any person who is using, for any purpose permitted by state law or by a municipal ordinance, bicycle routes constructed on the landowner's property pursuant to this chapter, unless the landowner charges a fee for the use of the property.

19 V.S.A. § 2309 (Supp.1997). The intent of the legislature in passing § 2309 was not to confer immunity on municipalities. Rather, it was to encourage private landowners to allow their property to. be used for bike paths. As such, the statute does not protect municipalities that construct bike paths.

### III. *Municipal Immunity*

[2–4] Burlington also contends that it is protected by the doctrine of municipal immunity. Municipal immunity, as the Vermont Supreme Court recently stated, is a common law doctrine dating back to the mid–1880s in Vermont. *Hillerby v. Town of Colchester*, 706 A.2d 446, 447 (Vt. 1997). The doctrine of municipal immunity protects a city from damage liability when the city is engaged in a *governmental* function unless the city has waived its immunity by purchasing insurance. *Dugan v. City of Burlington*, 135 Vt. 303, 304, 375 A.2d 991 (1977). A city will, however

"be liable for injuries caused or sustained in furtherance of its *proprietary* functions." *Id.* (emphasis added). This governmental/proprietary distinction, intended "to alleviate the harsh results of municipal immunity," *Hudson v. Town of East Montpelier,* 161 Vt. 168, 177 n. 3, 638 A.2d 561 (1993), remains alive in Vermont in the area of municipal tort liability. *See Hillerby,* 706 A.2d at 449 (refusing to repudiate government/proprietary function); *Vermont Gas Sys. v. City of Burlington,* 153 Vt. 210, 212, 215, 571 A.2d 45 (1989) (declining to apply the distinction in the area of utilities relocation law). Despite the recognition that it is in the distinct minority, the Vermont Supreme Court has continued to apply this distinction, reasoning that in performing governmental functions, municipalities act as instrumentalities of the State and do so for the general public. *Hillerby,* 706 A.2d at 447; *Hudson,* 161 Vt. at 177 n. 3, 638 A.2d 561. In contrast, a proprietary function is solely for the benefit of the municipality and its residents. *Id.* The issue before this Court is therefore whether in operating the Bikepath Burlington engaged in a governmental or proprietary function. *See id.* In the absence of any Vermont caselaw discussing this precise issue, this Court looks to the distinction Vermont courts have drawn between the two functions in an effort to predict how Vermont courts would view the operation of the Bikepath.

The Vermont Supreme Court has admitted "some difficulty distinguishing between governmental and proprietary functions." *Vermont Gas,* 153 Vt. at 213, 571 A.2d 45. This has led the court to conclude that "there is no established rule for the determination of what belongs to the one or the other class." *Town of Stockbridge v. State Highway Bd.,* 125 Vt. 366, 369, 216 A.2d 44 (1965). In so doing, the court has found "unworkable" a distinction that would find a function governmental when it is either "'(1) essential or necessary for the government to perform, or (2) traditional for the government to perform.'" *Vermont Gas,* 153 Vt. at 213, 571 A.2d 45 (quoting *Northwest Natural Gas Co. v. City of Portland,*

300 Or. 291, 300, 711 P.2d 119, 125 (1985)) (noting that under this test, "nearly all municipal activities are deemed governmental rather than proprietary"). At one time, it appeared that the Vermont courts, reflecting the policy behind the distinction, had adopted the position that a function is a governmental activity if it is discharged as a "public governmental duty" but a proprietary activity if it is done to benefit inhabitants of the municipality. *See Winn v. Village of Rutland,* 52 Vt. 481, 491, 493 (1880). Since that time, however, the court has rejected the proposition that the test is "whether the benefit from the exercise or the function accrues to the municipality in its corporate capacity or to the public generally." *Marshall v. Town of Brattleboro,* 121 Vt. 417, 425, 160 A.2d 762 (1960) ("This is not the test this Court finds persuasive for justifying immunity."). Rather, the court has reluctantly adopted the test of whether the function is "so necessary and so vital to the inhabitants [of the municipality] that the municipality itself ought to be immune from liability for the methods it uses in performing such function[ ]." *See id.* at 424, 160 A.2d 762 (noting that the test has become so firmly established in law that it cannot be lightly set aside).

As a result of the "difficulty distinguishing between governmental and proprietary functions," *Vermont Gas,* 153 Vt. at 213, 571 A.2d 45, the caselaw provides this Court little guidance in determining whether the maintenance of the Bikepath is a governmental or proprietary function. At various times, the court has affirmed the notion that maintenance of streets and sidewalks is a governmental function, *see Town of South Burlington v. American Fidelity Co.,* 125 Vt. 348, 350, 215 A.2d 508 (1965), but the maintenance of sewers is a proprietary function, *see Kelly v. Town of Brattleboro,* 161 Vt. 566, 567, 641 A.2d 345 (1993); *Fuller v. City of Rutland,* 122 Vt. 284, 286, 171 A.2d 58 (1961); *Winn,* 52 Vt. at 491. *But see Dugan,* 135 Vt. at 305, 375 A.2d 991 (because a catch-basin can be part of either a sewer or part of the street, plaintiff is not precluded from proving it

was part of sewer, and therefore maintenance of catch-basin could be proprietary function).

■ Legislative authorization of a function is not dispositive as to whether that function is governmental or proprietary. In the 1880 case of *Winn*, the court indicated that mere authorization indicates that a function is proprietary. *See Winn*, 52 Vt. at 491. In *Winn*, the court held that the creation of a sewer system was proprietary. *Id.* The court noted that where a municipal charter permits a municipality to do something, it is not governmental. *Id.* Rather, the court stated that a function is governmental where the function is imposed on the municipality by the legislature. *Id.* In 1942, the court took a contrary position in *Lemieux v. City of St. Albans*, 112 Vt. 512, 515, 28 A.2d 373. In that case, the court held that the construction of a playground is a governmental function. 112 Vt. at 516, 28 A.2d 373. The court noted with approval McQuillan, *Municipal Corporations*, second ed., revised, § 2793, for the proposition that the construction, improvement, or maintenance of a public park, camp, or playground is a governmental function. *Id.* at 514, 28 A.2d 373. The court further reasoned that the maintenance of public playgrounds is authorized by law, and the fact that powers have been conferred upon municipalities either by their charter provisions or by general statutes demonstrates that they are more of a governmental nature than a proprietary one. *Id.* at 515, 28 A.2d 373. Despite the reasoning of the *Lemieux* court, in 1961, the *Fuller* court cited the *Winn* reasoning with approval. 122 Vt. at 286, 171 A.2d 58.

In *Marshall*, the court held that the operation of a ski rope tow was not a governmental function. 121 Vt. at 425, 160 A.2d 762. The court reasoned that for an activity to be governmental, it must be so necessary and so vital to the inhabitants that the municipality ought to be immune from liability for the methods it uses in performing those functions. 121 Vt. at 424, 160 A.2d 762. The court, referring to

*Lemieux* and without elaboration, stated that

there is a sufficient difference between the general activity of the construction of a playground and the operation *within* that playground of motor-powered recreational equipment to justify a different result in this case. The policy that favors the construction of recreational areas by municipalities for its citizens is not so vital to the community, so essential a municipal operation, as to require that immunity from liability for carelessness be conferred willy-nilly on any and all activities the municipality may carry on *within* the confines of the recreation area. Insofar as this represents a' departure from the doctrine of the *Lemieux* case, the same is overruled.

*Id.* at 425, 160 A.2d 762 (emphasis added).

This Court addressed the proprietary/governmental distinction in *Katz v. City of Burlington*, No. 91–CV–35, slip op. (D.Vt. Mar. 11, 1992) (Magistrate Judge's Report and Recommendation) *adopted in toto*, Parker, C.J. (May 29, 1992). In that case, this Court held that the operation of an airport was a proprietary, not governmental, function. No. 91–CV–35, slip op., at 5. In *Katz*, the plaintiff had slipped on some ice or snow at Burlington International Airport. *Id.* at 2. Burlington argued that because its charter provides authority for the city to operate an airport, the legislature intended to cloak this function with governmental immunity. *Id.* at 4–5. Citing *Roman Catholic Diocese of Vermont, Inc. v. Winooski Housing Authority*, 137 Vt. 517, 519, 408 A.2d 649 (1979), I stated that this reads legislative intent too broadly. *Id.* at 5. In *Roman Catholic Diocese*, the Vermont Supreme Court rejected the defendant's position that municipal immunity attached because it was "a governmental entity created by statute to carry out an express legislative purpose." 137 Vt. at 519, 408 A.2d 649. Citing *Marshall*, the *Roman Catholic Diocese* court limited sovereign immunity to "those activities of the municipalities to necessary and so vital to the inhabitants that the municipality ought to be immune from liability

for the methods it uses in performing such functions." *Id.* As noted above, what those activities are and where the line is to be drawn remains unclear. *Vermont Gas Sys.,* 153 Vt. at 213, 571 A.2d 45. Nevertheless, in *Katz,* I determined that operating an airport is a proprietary function. No. 91–CV–35, at 5. Critical in this determination was the fact that operation of the airport resulted in a monetary return to the airport. *Id.* at 5–6.

At oral argument, Burlington contended that because 19 V.S.A. § 2307(a) permits municipalities to establish bikepaths,[2] the legislature intended to confer this function with governmental immunity. As discussed *supra,* the Vermont courts' position on this argument is unclear. Although the *Lemieux* court noted that powers conferred upon municipalities by statues tend to be governmental, *see Lemieux,* 112 Vt. at 515, 28 A.2d 373, the *Winn* and *Fuller* courts stated that where the legislature confers a privilege to do something, as opposed to an obligation to do it, the function is proprietary, *see Fuller,* 122 Vt. at 286, 171 A.2d 58; *Winn,* 52 Vt. at 491. As in *Katz,* where Burlington contended that the right to maintain an airport implied a governmental function, Burlington's reading of legislative intent is too broad, and the legislature's passage § 2307(a) does not mean that the maintenance of a bikepath is a governmental function. *See Katz,* No. 91–CV–35, at 5. Nevertheless, linkage of bikepaths with highways, which are governmental in nature, *see American Fidelity,* 125 Vt. at 350, 215 A.2d 508, is a factor to be considered in making the final determination.

Gretkowski contends that the Bikepath is not "so necessary and so vital" that Burlington should be immune from liability. Burlington argues that the Bikepath is necessary to the community because it provides a means of transportation. This argument is weakened by Burlington's concession that the city does not plow the Bikepath during the winter. Nevertheless, I disagree with Gretkowski. If the test of "so necessary and so vital" is that it be *absolutely* vital and necessary, nothing would qualify as a governmental function. Individuals can, after all, live without sidewalks and roads, yet the courts have stated that their maintenance is a governmental function.

The operation of the Bikepath most closely resembles the operation of a park, which the Vermont courts have stated is a governmental function. *See Lemieux,* 112 Vt. at 516, 28 A.2d 373. The Bikepath is a recreational area, which public policy favors. *See Marshall,* 121 Vt. at 425, 160 A.2d 762. The facts of the instant case are clearly distinguishable from those of *Marshall,* where the court found that the operation of a rope tow was not a governmental function because it was an activity carried on *within* the confines of the recreation area. *See id.* In the present case, there is no comparable activity on the Bikepath that is a proprietary function. Moreover, the legislature's equating bike paths with highways, while not dispositive, indicates that they are comparable as governmental functions. *See* 19 V.S.A. § 2307(a).

## CONCLUSION

For the foregoing reasons, Burlington's motion for summary judgment is GRANTED.

---

2. 19 V.S.A. § 2307(a) states
Legislative bodies of municipalities shall have the same powers granted [the agency of transportation] under sections 2302, 2303, and 2305 of this title relating to highways under their jurisdiction and funds appropriated to municipalities under 19 V.S.A. § 306 may be used for the establishment of bicycle routes.

19 V.S.A. § 2307(a) (Supp.1997). Section 2302 allows the agency of transportation to establish and maintain bicycle routes "separately or in conjunction with the construction, reconstruction or maintenance of an existing or new highway." 19 V.S.A. § 2302 (Supp. 1997).